NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-5144-17T4

ESTATE OF BRANDON TYLER
NARLESKI, deceased by Administrator
ad Prosequendum, JOHN A. NARLESKI
and LORI ANNIELLO-NARLESKI,
and JOHN A. NARLESKI, Individually,

      Plaintiffs,

v.

NICHOLAS GOMES, ORQUIVANES
GOMES, and SERGIO GOMES,

      Defendants,

and

AMBOY FOOD LIQUOR AND NEWS
INC., a/k/a KRAUSZERS, and KRAUSZERS
FOOD AND LIQUOR, INC., a/k/a
KRAUSZERS FOOD & LIQUOR, INC.,

      Defendants/Third-Party
      Plaintiffs-Appellants,

v.

MERCEDES APRAEZ, ZDZISLAW
ZWIERZYNSKI, and MARK ZWIERZYNSKI,

      Third-Party Defendants-
      Respondents.

_____

> **APPROVED FOR PUBLICATION**
>
> **June 6, 2019**
>
> **APPELLATE DIVISION**

Argued May 6, 2019 – Decided June 6, 2019

Before Judges Sabatino, Haas and Susswein.

On appeal from Superior Court of New Jersey, Law Division, Middlesex County, Docket No. L-7085-15.

Mark Robert Scirocco argued the cause for appellant (Law Offices of Robert A. Scirocco, PC, attorneys; Mark R. Scirocco and Robert A. Scirocco, of counsel and on the briefs).

Russell L. Macnow argued the cause for respondents.

The opinion of the court was delivered by

SABATINO, P.J.A.D.

The tragedy of this wrongful death case began when the defendant liquor store sold about a half-gallon of vodka and three twenty-four ounce cans of beer to the nineteen-year-old decedent without checking his identification. Decedent and a group of his friends – all of whom were likewise young adults under the legal drinking age of twenty-one – then converged at the home of one of the young men. They drank the purchased alcohol in the young host's bedroom. Decedent then left the house as a passenger in the car of one of the inebriated youths. He died when the driver lost control of the car and it flipped over.

The decedent's estate sued the car driver and its owners for negligence and the liquor store under the Dram Shop Act. The liquor store pled a third-

party complaint against the young man who had hosted the gathering and his parents, although the estate declined to name them as direct defendants. The estate eventually settled its claims with the liquor store and the driver.

The third-party defendants moved for summary judgment. The trial court granted the motion, finding that neither the underage adult host nor his parents had breached any established legal duty. The liquor store now appeals, urging us to recognize and enforce such duties.

We hold that, under the circumstances presented, the parents had no statutory or common law duty to prevent their adult underage son from allowing his adult underage friends to drink alcohol in their home without the parents' proven knowledge or consent. Nor did the son have an established duty of care under current law.

Going forward, however, we prospectively hold that an adult who is under the legal drinking age shall owe injured parties a duty under the common law to desist from facilitating drinking by underage adults in his or her place of residence. The recognition of such a legal duty is a logical extension of case law, and is consistent with the general public policies that underpin the related statutes.

A-5144-17T4

I.

A.

We summarize the pertinent facts presented in the summary judgment record, mindful that there are a few variations in the witnesses' narratives. We consider those facts in a light most favorable to appellant as the non-moving party. R. 4:46-2; Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995).

On November 9, 2014, decedent Brandon Narleski purchased a "handle" of vodka,[1] three twenty-four ounce cans of beer, and a two-liter bottle of soda from a liquor store owned and operated by defendant Amboy Food Liquor and News, Inc. ("Amboy"). Three young men – Xavier Pinto, Zachary Johnson, and Mark[2] Zwierzynski – accompanied Narleski to the liquor store. Notably, all four individuals were adults over the age of eighteen but were under the legal drinking age of twenty-one. When Narleski went to the counter to make his purchase, Amboy's retail clerk did not ask him for a driver's license or other identification to confirm he was of legal drinking age.

---

[1]  A "handle" consists of 1.75 liters of alcohol, or about a half-gallon.

[2]  We use Mark's first name to distinguish him from his father, Zdzislaw Zwierzynski, intending no disrespect in doing so.

A-5144-17T4

Once Narleski purchased the alcohol, the young men drove to Mark's house, where he lived with his mother, Mercedes Apraez.[3] While at the residence, the four friends "hung out" in Mark's bedroom, drank the purchased alcohol, and played games. Mark's mother was not home when they arrived. Apparently, she had been out of the house since the night before.

At some point during the gathering, Narleski sent a text message to Nicholas Gomes, who also was an adult under the age of twenty-one, to come to Mark's house to join the group in drinking. According to Gomes, he arrived at Mark's house around 9:00 p.m. Gomes claimed he "downed" two cups filled with approximately two inches of vodka mixed with orange juice while he was there.

It is undisputed that Mark's mother eventually came home that evening. However, there is some dispute about exactly what time she arrived. According to Gomes's deposition testimony, after he was at Mark's residence for about fifty minutes, Mark received a call that his mother was coming home. Gomes and Narleski then left the residence to go to another friend's house.

Before coming home, Apraez picked up Mark's daughter from the house of the child's mother. Apraez testified at her deposition that, except for her

---

[3] Mark's father owned the residence with Apraez. However, the father testified that he was separated at the time from Apraez and was not living at the residence.

son Mark, she never saw any of the other young men in her house that night, or knew that they were drinking alcohol there. She insisted that she did not leave alcohol in her home, nor did she allow Mark to drink there.

According to Apraez, upon arriving at the house, she sent Mark a text message and asked him to help bring his daughter inside. Apraez testified that Mark met her at the front door and assisted her with the child.

Mark provided slightly different accounts of what occurred. He testified at his deposition that he could not recall whether his daughter was present in the house while he and his friends were drinking. However, in an earlier statement to the police, Mark stated that, on that night, he "departed his bedroom to tend to his child in another room of the residence for a time period of approximately twenty . . . minutes, and upon his return, at approximately 10 p.m. . . . [he] briefly spoke to Brandon [Narleski] and Nicholas [Gomes] who then departed the residence in Gomes's vehicle."

Mark did admit at his deposition that he had accompanied Narleski to purchase the alcohol at the liquor store, and that he and his friends drank the alcohol in his bedroom. He denied that Gomes and Narleski appeared to him to be intoxicated.

After Gomes and Narleski left the house, they got into Gomes's car, intending to go to a friend's house about fifteen minutes away. Gomes got into

the driver's seat and fastened his seatbelt. Narleski got into the passenger's seat, but did not fasten his own seatbelt.

While Gomes was driving on a highway, he lost control of the car and crashed into the center median. As a result of the crash, Narleski was ejected from the vehicle and pronounced dead on the scene.

An analysis of Gomes's blood revealed his blood alcohol content ("BAC") was .161 at the time of the accident, well above the .08 legal limit for BAC specified by N.J.S.A. 39:4-50(a).

## B.

In the wake of this tragedy, the Estate of Brandon Narleski and his parents filed a wrongful death complaint in the Law Division. As amended, the complaint alleged that Gomes was liable for his intoxicated operation of the vehicle that resulted in the crash and Narleski's death, and that, in addition, Amboy was liable under the Dram Shop Act, N.J.S.A. 2A:22A-1 to -7.[4]

---

[4]    The official title of the Dram Shop Act is the "New Jersey Licensed Alcoholic Beverage Server Fair Liability Act." N.J.S.A. 2A:22A-1. The statute, which was enacted in 1987, establishes "the exclusive civil remedy for personal injury or property damage resulting from the negligent service of alcoholic beverages by a licensed alcoholic beverage servicer." N.J.S.A. 2A:22A-4. The statute imposes civil liability upon a licensed server who negligently serves alcohol to a visibly intoxicated person, or to a minor "under circumstances where the server knew, or reasonably should have known, that the person served was a minor." N.J.S.A. 2A:22A-5(b).

With leave of court, Amboy filed a third-party complaint against Mark Zwierzynski and his parents, seeking contribution and indemnity. The third-party complaint alleged that Mark and his parents were negligent in failing to supervise Narleski and Gomes, enabling those underage adults to consume alcohol in their home. Notably, plaintiffs declined to name Mark and his parents as direct defendants after Amboy brought them into the case.

At the close of discovery, the third-party defendants moved for summary judgment. After hearing oral argument, the trial court granted the motion in an oral ruling on March 29, 2018.

In granting summary judgment, the motion judge concluded that the third-party defendants did not have a legal duty to supervise the underage persons who had been drinking alcohol in their home because those persons were adults. The judge also found that Mark's father did not reside in the home at the time and that he clearly had no duty to supervise the visitors. Additionally, the judge found that Mark's mother Apraez had no duty under the circumstances presented. The judge noted in particular that Apraez did not make her home available "for the purpose of" underage drinking pursuant to

the disorderly persons statute relied upon by Amboy, N.J.S.A. 2C:33-17(b).[5]

Amboy moved for reconsideration, which the judge denied.

Thereafter, plaintiffs settled their claims with the direct defendants, i.e., Amboy and Gomes. In the consent order memorializing that settlement, Amboy preserved its right to appeal the court's dismissal of its third-party claims.

## C.

On appeal, Amboy urges that we reverse the trial court, and hold that both Mark Zwierzynski and his parents owed and breached a legal duty by allowing underage adults to consume alcohol in their home.

The third-party defendants counter that no such novel duty should be recognized by this court. They assert that the existing statutory scheme and the common law should not be extended to impose liability as Amboy proposes.

## II.

We rest our analysis upon both common law principles and the public policies expressed in various statutes.

Fundamentally, Amboy asserts that Mark and his parents respectively engaged in negligent conduct that supports civil liability. The well-established

---

[5] We discuss this statute in more detail, <u>infra</u>, at Part II (C).

elements of negligence are: (1) a duty of care, (2) a breach of that duty, (3) proximate causation of harm, and (4) damages. Townsend v. Pierre, 221 N.J. 36, 51 (2015). A claimant in a negligence case bears the burden of proving that a defendant's unreasonable acts or omissions proximately caused injury. Camp v. Jiffy Lube No. 114, 309 N.J. Super. 305, 309-11 (App. Div. 1998).

The issue of whether a duty is owed to a plaintiff by a particular defendant is a question of law for the court. Clohesy v. Food Circus Supermarkets, Inc., 149 N.J. 496, 502 (1997). Accordingly, we review de novo the trial court's legal determination that none of the third-party defendants owed an actionable duty of care to plaintiff in this case. Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995); Voss v. Tranquilino, 413 N.J. Super. 82, 86 (App. Div. 2010) (applying de novo appellate review to questions of law arising under the Dram Shop Act).

When evaluating whether such a duty of care was owed by Mark or his parents in the circumstances presented, we bear in mind the strong public policies codified in legislation relating to alcohol consumption. In particular, we consider the laws prohibiting the consumption of alcohol by underage persons. We also consider the laws that impose responsibility upon certain social hosts for enabling visibly intoxicated guests from consuming alcohol at their homes.

A-5144-17T4

A.

N.J.S.A. 9:17B-1(b) provides that persons must be the age of twenty-one or older in order to purchase and consume alcoholic beverages. In addition, N.J.S.A. 2C:33-15 makes it a disorderly persons offense for a person under the age of twenty-one to knowingly possess or consume alcoholic beverages in any public place or motor vehicle. The age limit is presumably predicated on a legislative judgment that persons of a younger age are not generally capable of drinking responsibly or making reasonable decisions about their personal use of alcohol.

B.

Our State also has long-standing public policies holding certain social hosts accountable for allowing their visibly intoxicated guests to imbibe alcohol in their homes. The Supreme Court initially recognized such policies in Kelly v. Gwinnell, 96 N.J. 538, 548 (1984), when it held that "a host who serves liquor to an adult social guest, knowing both that the guest is intoxicated and will thereafter be operating a motor vehicle, is liable for injuries inflicted on a third party as a result of the [vehicle's] negligent operation . . . by the adult guest when such negligence is caused by the intoxication." In fashioning that rule of liability under the common law, the

11

Court in <u>Kelly</u> underscored the public need to reduce fatalities and other injuries caused by drunken driving. <u>Id.</u> at 544-46.

Three years after the Court's opinion in <u>Kelly</u>, the Legislature enacted N.J.S.A. 2A:15-5.5 to -5.8, an untitled law which we shall refer to as the "Social Host Liability Statute." The statute imposes civil liability upon adult social hosts to injured third parties where:

> (1) The social host willfully and knowingly provided alcoholic beverages either:
>
> > (a) To a person who was visibly intoxicated in the social host's presence; or
> >
> > (b) To a person who was visibly intoxicated under circumstances manifesting reckless disregard of the consequences as affecting the life or property of another; and
>
> (2) The social host provided alcoholic beverages to the visibly intoxicated person under circumstances which created an unreasonable risk of foreseeable harm to the life or property of another, and the social host failed to exercise reasonable care and diligence to avoid the foreseeable risk; and
>
> (3) The injury arose out of an accident caused by the negligent operation of a vehicle by the visibly intoxicated person who was provided alcoholic beverages by a social host.
>
> [N.J.S.A. 2A:15-5.6(b)].

Notably, the Social Host Liability Statute defines "social host" in a limited fashion as a person "who <u>legally</u> provides alcoholic beverages <u>to</u>

another person who has <u>attained the legal age</u> to purchase and consume alcoholic beverages." N.J.S.A. 2A:15-5.5 (emphasis added). The statute provides "the exclusive civil remedy for personal injury or property damage resulting from the negligent provision of alcoholic beverages by a social host <u>to a person who has attained the legal age</u> to purchase and consume alcoholic beverages." N.J.S.A. 2A:15-5.6(a) (emphasis added).

The Social Host Liability Statute therefore does not apply by its terms to a situation such as the present case, because neither Mark nor his parents qualify as social hosts under the statutory definition. It is undisputed that Mark, being underage, could not legally provide alcohol to anyone. Moreover, all four of the young men at the house were under the legal age to purchase and consume alcoholic beverages.

In addition, the statute "does not recognize a first-party liability claim on behalf of an intoxicated driver. A social host cannot be liable to the person to whom the beverages are served, although [he or she] may be ultimately liable if that person injures a third party." <u>AAA Mid-Atlantic Ins. of N.J. v. Prudential Prop. & Cas. Ins. Co.</u>, 336 N.J. Super. 71, 78 (App. Div. 2000). <u>See also</u> <u>Componile v. Maybee</u>, 273 N.J. Super. 402, 408-09 (Law Div. 1994) ("A social host may only be directly liable to minors and to third persons injured in

automobile accidents. A social host is not liable to anyone else injured as a result of the social host's serving of intoxicating beverages to a guest.").

Indeed, N.J.S.A. 2A:15-5.7 provides: "No social host shall be held liable to a person who has attained the legal age to purchase and consume alcoholic beverages for damages suffered as a result of the social host's negligent provision of alcoholic beverages to that person." Without dispute, Narleski, an underaged adult, not only drank at Mark's house, but also illegally purchased the alcohol for his friends. Accordingly, Narleski is not a third party who could assert liability under the Social Host Liability Statute.

Hence, although the Social Host Liability Statute and the Court's preceding opinion in Kelly exemplify important public policies to deter the provision of alcohol by social hosts to persons who are too inebriated to drive, the specific terms of the statute do not extend to Mark and his parents. The question then becomes whether the common law or other statutes provide support for civil liability.

C.

In an effort to identify such support, Amboy places reliance upon a quasi-criminal statute, N.J.S.A. 2C:33-17, which we have already mentioned. This statute makes it a disorderly persons offense to, among other things, offer, serve, or make available alcoholic beverages to underage persons in certain

circumstances.  Specifically, the statute, which was first enacted in 1985 and thereafter amended in 1995 and 2015, provides:

a. Anyone who <u>purposely or knowingly offers or serves or makes available an alcoholic beverage to a person under the legal age</u> for consuming alcoholic beverages <u>or entices or encourages that person to drink</u> an alcoholic beverage is a disorderly person.

This subsection shall not apply to a parent or guardian of the person under legal age for consuming alcoholic beverages if the parent or guardian is of the legal age to consume alcoholic beverages or to a religious observance, ceremony or rite. This subsection shall also not apply to any person in his home who is of the legal age to consume alcoholic beverages who offers or serves or makes available an alcoholic beverage to a person under the legal age for consuming alcoholic beverages or entices that person to drink an alcoholic beverage in the presence of and with the permission of the parent or guardian of the person under the legal age for consuming alcoholic beverages if the parent or guardian is of the legal age to consume alcoholic beverages.

b. A person who <u>makes real property owned, leased or managed by him available to, or leaves that property in the care of, another person with the purpose that alcoholic beverages will be made available for consumption by, or will be consumed by, persons who are under the legal age</u> for consuming alcoholic beverages is guilty of a disorderly persons offense.

This subsection shall not apply if:

(1) [T]he real property is licensed or required to be licensed by the Division of Alcoholic Beverage Control in accordance with the provisions of R.S.33:1-1 et seq.;

15

(2) [T]he person making the property available, or leaving it in the care of another person, is of the legal age to consume alcoholic beverages and is the parent or guardian of the person who consumes alcoholic beverages while under the legal age for consuming alcoholic beverages; or

(3) [T]he alcoholic beverages are consumed by a person under the legal age for consuming alcoholic beverages during a religious observance, ceremony or rite.

c. For purposes of this section, an alcoholic beverage includes powdered alcohol as defined by R.S.33:1-1.

[N.J.S.A. 2C:33-17 (emphasis added).]

Notably, the Senate's Introductory Statement accompanying the bill that became N.J.S.A. 2C:33-17 announced: "The purpose of this bill is to discourage drinking by persons under the legal age to consume alcoholic beverages by placing more responsibility on adults." Introductory Statement to S. 2312 (L. 1985, c. 311) (emphasis added).

As we will now discuss, the literal terms of N.J.S.A. 2C:33-17 do not apply to Mark or his parents, based on the facts in the summary judgment record. Again, we review that record in light most favorable to Amboy. Brill, 142 N.J. at 540.

1.

The conduct of Mark's parents does not violate subsection (a) of the statute, because there is no proof that either of them purposely or knowingly

16

served, or made available, alcoholic beverages to persons under the legal drinking age, or that they encouraged such underage persons to imbibe alcohol. Even viewing the record in a light most favorable to Amboy, at most Mark's statement to the police indicates that his mother arrived home at some point after the young men were already drinking in Mark's bedroom. There is no evidence the mother went into the bedroom at any point or knew what was going on there. The father, moreover, was not living in the residence at that time. Neither parent therefore violated N.J.S.A. 2C:33-17(a).

Subsection (b) of N.J.S.A. 2C:33-17, which applies to certain homeowners, tenants, and building managers also does not inculpate Mark's parents. There is no evidence that Apraez or Mark's father had a "purpose" to make alcoholic beverages available at the residence to underage drinkers. Our criminal code defines the term "purposely" to entail a person acting with a "conscious object" to cause a desired result. N.J.S.A. 2C:2-2(b)(1). Such proof of a conscious object is lacking here. The deposition testimony of Apraez attesting that she did not drink and did not keep alcohol in the house is unrefuted. Furthermore, there is no evidence – beyond pure speculation – that Apraez knew that underage drinking was occurring on the night in question, or that she facilitated or condoned it. And, as we have stated, Mark's father was not living there.

2.

Although it is a closer question, we are further persuaded that the evidence cannot establish the elements of either N.J.S.A. 2C:33-17(a) or (b) as to Mark. Subsection (a) does not apply because the vodka and beer was purchased by Narleski, and there is no proof that Mark made any other alcohol available. Subsection (b) does not cover Mark because there is no evidence that he "owned, leased, or managed" his parents' house. At most, the evidence merely shows that Mark kept a bedroom there, as is common among many young adults.

D.

Because there is no express statutory basis to impose responsibility upon Mark and his parents in this case, we turn to whether Amboy's claims against them can be founded upon the common law. The two cases most akin (but not identical to) the present scenario are this court's opinions in <u>Thomas v. Romeis</u>, 234 N.J. Super. 364 (App. Div. 1989) and <u>Morella v. Machu</u>, 235 N.J. Super. 604 (App. Div. 1989).

In <u>Thomas</u>, we considered whether the twenty-year-old son who hosted a party and allegedly provided alcohol at his parents' house while they were away on vacation could be liable for a motor vehicle accident caused by an inebriated seventeen-year-old guest who attended the party. 234 N.J. Super. at

18

366. We recognized that the twenty-year-old defendant, although "a minor for the purpose of purchasing alcoholic beverages . . . was, nonetheless, an adult with respect to 'basic civil and contractual rights and obligations,' including the right to 'sue, be sued and defend civil actions . . . .'" Id. at 370 (citing N.J.S.A. 9:17B-1(a)). We further noted in Thomas that "persons who have obtained the age of 18 years are held to adult responsibility in tort." Ibid. (citing Goss v. Allen, 70 N.J. 442, 449 (1976)). Consequently, we rejected the defendant's argument that the situation should be analyzed "in terms of one minor serving another minor an intoxicating beverage[.]" Ibid.

Having expressed these general principles of potential culpability in Thomas, we nonetheless upheld the verdict in favor of the twenty-year-old host because the jury determined that the host was not negligent. Id. at 370-72.[6] We further noted that N.J.S.A. 2C:33-17 was not applicable, because that statute did not become effective until after the subject accident. Id. at 374.

Significantly, the parents in Thomas obtained summary judgment, as they had been away on vacation when the drinking event at their house

---

[6] As observed in our opinion, the record in Thomas was unclear as to whether the jury found the son was not negligent because he had not actually provided alcohol or because he did not provide alcohol at a time after the guest who drove the car had become visibly intoxicated. Id. at 372.

occurred.  Id. at 368.  That summary judgment ruling was not disturbed on appeal.  Ibid.

The other key case cited by Amboy is Morella, 235 N.J. Super. at 604. In that case, three minor, teenaged sons were left in the care of a twenty-year-old "live-in supervisor" when their parents went on vacation.  Id. at 607. While the parents were away, a party with underaged drinking occurred at the residence.  The twenty-year-old supervisor did nothing to prevent or break up the party.  Ibid.  As a result, an eighteen-year-old patron of the party left the premises intoxicated, drove away, and was involved in an accident that resulted in injuries to a third-party driver.  Ibid.

This court reversed summary judgment in favor of the parents in Morella, concluding that parents have a duty to exercise reasonable care in arranging the supervision of their minor, teenaged children when they will be away from home.  Id. at 608.  We reasoned that "rational development of the common law in light of [the] declared legislative policy [against facilitating underaged drinking] requires parents to arrange for proper supervision of their teenagers when they are away from the home for a period of time during which spontaneous parties featuring alcoholic beverages are reasonably foreseeable." Id. at 610 (emphasis added).  "In default of the exercise of due care, [such parents] must answer in damages caused to innocent persons."  Ibid.

20

In addition to holding the parents in <u>Morella</u> subject to liability, we also ruled – albeit without extensive discussion – that the twenty-year-old supervisor and the parents' seventeen-year-old son also could be liable for the minors' drinking. We reversed summary judgment that had been granted in favor of those defendants. <u>Id.</u> at 611. In a footnote to our opinion, we recognized that, under the circumstances, it would be appropriate to treat both the supervisor and the son as adults with respect to such common law civil liability, even though neither of them was old enough to legally purchase or consume alcoholic beverages. <u>Id.</u> at 611 n.3.

Neither <u>Thomas</u> nor <u>Morella</u> is directly on point with our present case. In both of those cases, the persons drinking alcohol at the parents' residence included some minors. By contrast, in the present case Mark and his guests at the house were all adults, albeit under the legal drinking age.

We agree with the motion judge that, in the absence of a statutory directive or controlling case law that dictates otherwise, it would be inappropriate to impose civil liability upon Mark's parents in the circumstances presented – where their adult son and his adult friends consumed alcohol in the confines of Mark's bedroom without proof of the parents' acquiescence or awareness.

21

Amboy suggests that the parents should have been obligated to take measures to "supervise" their adult son or otherwise prevent him from hosting a party with underage adult drinkers. It is unrealistic to expect a parent of an adult in such circumstances to prevent such underage drinking on the premises. We do not conceive the law to require parents of such adults to hire a "chaperone" or "supervisor" every time they leave their adult child alone in the house. Nor should parents be obligated to install video surveillance cameras, which probably could be readily evaded anyway.

## III.

Our State has not specifically addressed the issue of whether a parent has a duty to supervise his or her adult children when they engage in or facilitate drinking by other underage adults. However, several other jurisdictions have held, for public policy reasons, that parents generally do not have a duty to control the wayward conduct of their adult offspring.[7]

---

[7] See, e.g., Alioto v. Marnell, 520 N.E.2d 1284, 1286 (Mass. 1988) (holding that one's status as a parent, without more, does not impose a duty upon that person to supervise and control one's adult child); Reinert v. Dolezel, 383 N.W.2d 148, 151 (Mich. Ct. App. 1985) (finding that "[a]ny duty the parents had to supervise their child's conduct ended when that child became an adult"); Kukesh v. Mutrie, 122 A.3d 312, 321 (N.H. 2015) (holding that "[i]mposing liability on parents based merely upon their provision of financial assistance or housing to their adult children would effectively force parents to choose between supporting an adult child for whatever reason and shielding themselves from liability by abandoning that child"); Riggs v. Wright, 510

(continued)

Section 319 of the Restatement (Second) of Torts (1965), states: "One who takes charge of a third person whom he knows or should know to be likely to cause bodily injury to others if not controlled is under a duty to exercise reasonable care to control the third person to prevent him from doing such harm." However, New Jersey has not adopted that Restatement provision in the context of parental social host liability. Nor, to our knowledge, has any other jurisdiction.

We are mindful that some courts have recognized a parents' duty of care for an adult child's conduct where a "special relationship" between the parent and the child has been demonstrated. See, e.g., Silberstein v. Cordie, 474 N.W.2d 850, 856-57 (Minn. Ct. App. 1991) (holding that the defendant parents had a special relationship with their schizophrenic twenty-seven-year-old son who was completely dependent on them for his day-to-day care, and were liable for the son's homicidal acts while they were away, because they knew he had stopped taking his medication in the preceding months, had made

_____

(continued)
S.W.3d 421, 432 (Tenn. Ct. App. 2016) (determining that a family relationship alone is not sufficient to establish a duty to control an adult child "because it does not necessarily carry with it the capacity or authority to control"); Drysdale ex rel. Strong v. Rogers, 869 P.2d 1, 3-4 (Utah Ct. App. 1994) (finding that placing a duty on parents to supervise their non-minor children would be contrary to general tort principles that one does not have a duty to control the conduct of third parties).

delusional threats about harming the victim in the past, and left an unlocked shotgun in their bedroom when they went away); <u>Smith v. Freund</u>, 121 Cal. Rptr. 3d 427, 433 (Cal. Ct. App. 2011) (finding that a special relationship existed between a nineteen-year-old mentally disturbed man and his parents, but ultimately ruling that the parents were not liable for his conduct because his criminal act was unforeseeable). Again, New Jersey has not adopted this principle in the setting of social host liability.[8] Nor apparently has any other jurisdiction.

We decline to adopt such a novel principle of liability with respect to the parents in this underage drinking case. That said, we do not reach whether a factual setting might conceivably arise in the future in which a parent should have such liability.[9]

---

[8] <u>Cf.</u> <u>J.S. v. R.T.H.</u>, 155 N.J. 330, 353-54 (1998) (adopting, outside of a parent-child context, a "particularized relationship" test, and concluding that a wife had a duty to warn or prevent harm when she had reason to know her husband was engaging in sexually abusive behavior against a neighbor's adolescent daughter); <u>G.A.-H v. K.G.G.</u>, 455 N.J. Super. 294, 304 (App. Div. 2018) (recognizing a duty to act potentially is not limited to a spousal relationship, and remanding to develop the record more fully on the issue).

[9] Liability possibly would be justified in a situation, for example, which an underage adult child tells a parent that he or she plans to host a party at the house at which he or she and other underage adults will consume alcohol, and the parent thereafter leaves the house knowing there is a case of beer in the refrigerator or an unlocked cabinet filled with liquor.

Turning to Mark's status as a third-party defendant, we are aware of no established precedent in New Jersey that imposes liability upon him in the circumstances of this case. Even so, we conceive of his potential culpability as being materially different from that of his parents.

Mark accompanied Narleski and the other friends to the liquor store to make the illegal purchase. He invited them back to the house. He furtively confined the drinking to his bedroom, over which he presumably exercised a substantial degree of control even though he did not own or apparently rent his quarters. Mark actively participated in the drinking. He did not inform his mother of what was occurring.

Moreover, Mark was already a parent himself. It does not seem unwise or unfair to expose a young adult in his shoes to liability. Such liability would be a logical extension of case law, such as Morella, in which we held the seventeen-year-old son had liability for providing alcohol to minors at the party he hosted while his parents were away, and in Thomas in which we implicitly recognized potential liability but affirmed a jury verdict declining to find negligence for reasons that were unclear from the verdict form.

Although the imposition of liability upon Mark in this factual scenario seems consistent with sound public policy, we stop short of imposing upon him a novel rule of liability that he might not have reasonably anticipated. We

discern no equitable or practical necessity to impose such a principle retroactively. Amboy suggests that we should do so to generate an additional source of compensation for accident victims who are killed or injured by drunk drivers. However, as we noted, plaintiffs in this case declined to add Mark as a direct defendant, and apparently were satisfied to pursue recovery from only the liquor store and Gomes.

Prospectively, however, we hold that an adult such as Mark Zwierzynski who is under the legal drinking age shall owe a common law duty to injured parties to desist from facilitating the drinking of alcohol by underage adults in his place of residence, regardless of whether he owns, rents, or manages the premises.[10] Such a rule of law is a logical extension of Thomas and Morella, and is consistent with the policy objectives of related statutes.[11]

Out of respect for the greater authority of the Supreme Court and the Legislature on the subject, we defer the effective date for conduct covered by

---

[10] We need not resolve here whether a claim for contribution or indemnity by a Dram Shop defendant against an underage social host seeking to diminish its liability would be viable or instead contrary to public policy.

[11] We recognize that the common law rule of liability we have endorsed goes beyond the scope of the disorderly persons statute, N.J.S.A. 2C:33-17. However, civil liability can extend more broadly than criminal liability in order to advance civil law objectives. See State v. Burkert, 231 N.J. 257, 287 (2017) (recognizing that although the defendant was not guilty of a disorderly persons offense, he could still be subject to civil tort liability).

our prospective holding for 180 days to enable possible further judicial review or responsive legislation.

For these reasons, the trial court's summary judgment dismissal of Amboy's third-party complaint is affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5144-17T4