**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0159-19

JACK SCAVONE,

      Plaintiff-Appellant/
      Cross-Respondent,

v.

BRUCE OLIVER, ROBERTA
OLIVER, and VICTORIA
OLIVER,

      Defendants-Third-Party
      Plaintiffs-Respondents/
      Cross-Appellants,

v.

A.J. MANZI,[1]

      Third-Party Defendant/
      Cross-Respondent,

and

NICK BERGER, MARCO TRIA,
and GRANT LAYTON,

---

[1] Defendant's correct first name is Alan.

Third-Party Defendants.

_____

Argued April 26, 2021 – Decided May 24, 2021

Before Judges Mayer and Susswein.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-3811-17.

Andrew F. Garcia argued the cause for appellant/cross-respondent (The Cintron Firm, LLC, attorneys; Mark J. Cintron, of counsel and on the brief).

Matthew G. Minor argued the cause for respondents/cross-appellants Bruce Oliver, Roberta Oliver, and Victoria Oliver (Sweet Pasquarelli, PC, attorneys; Matthew G. Minor, on the briefs).

Gerard H. Hanson argued the cause for cross-respondent A.J. Manzi (Hill Wallack LLP, attorneys; Gerard H. Hanson and Todd J. Leon, on the brief).

PER CURIAM

Plaintiff Jack Scavone appeals from an August 2, 2019 order granting summary judgment in favor of defendants Bruce Oliver, Roberta Oliver, and Victoria Oliver[2] (Olivers).

The Olivers cross-appeal from the following orders: an April 12, 2019 order denying their motion to compel production of documents, specifically text

_____

[2] We refer to the individual Olivers by their first names to avoid confusion. No disrespect is intended.

or group chat messages; a May 10, 2019 order denying reconsideration of the April 12, 2019 order; and an August 2, 2019 order declaring their third-party complaint against third-party defendant A.J. Manzi[3] moot based on the August 2, 2019 order granting summary judgment to the Olivers. We reverse and remand all orders.

We summarize the facts based on the summary judgment motion record. Victoria lived with her parents, Bruce and Roberta, in a single-family home. On June 18, 2015, Victoria, then eighteen years old, invited some friends to her house for a gathering. The invited guests included plaintiff and plaintiff's friends. According to Victoria, plaintiff and his friends, including Manzi, arrived at the house around 10:30 or 11:00 at night, later than the other guests. Plaintiff and his friends joined the other guests in the basement of the Olivers' home. Based on the deposition testimony, the number of guests in the basement ranged from eight people to twenty-five people. All of the guests were under the age of twenty-one.

There is discrepant testimony whether plaintiff and his friends consumed alcohol prior to arriving at the Oliver home. Plaintiff and his friends testified

---

[3] Manzi's first name is Alan. He was over the age of eighteen at the time but under the age of twenty-one.

A-0159-19

they did not consumer alcohol until after their arrival at the Olivers' house. According to the deposition testimony, there was beer available in the basement, and people were holding cans of beer. Some party goers testified guests were drinking vodka from red plastic cups.

Victoria denied there was any alcohol in the basement. Bruce testified at some point he went down to the basement to speak to Victoria. Bruce did not see anyone drinking beer. Nor did he detect an odor of alcohol in the basement. Roberta was on the second floor of her home and did not see anyone associated with the gathering. Nor did Roberta notice an odor of alcohol in her home.

Plaintiff testified his friends did not bring any alcohol to the Olivers' residence. According to plaintiff, there was alcohol in the basement when he arrived, including cases of beer on the floor. Plaintiff drank five to six beers and Manzi admitted drinking three to four beers. Grant Layton, one of plaintiff's friends, spoke with Bruce that night. Bruce allegedly visited the basement several times throughout the course of the evening. Layton believed he may have held a beer can in his hand when he spoke with Bruce. Nicholas Berger, another friend of plaintiff, testified there was a strong odor of alcohol in the basement and, because it was a hot summer night, "[y]ou could smell the beer and the alcohol."

4

The party eventually moved to the driveway of the Olivers' home.[4] According to Layton, there was a case of beer on the Olivers' driveway near a basketball hoop. While outside, plaintiff and Manzi engaged in "light horseplay." While the specifics of the horseplay are disputed, plaintiff was pushed from behind. Plaintiff, who claimed he was intoxicated, turned around to push Manzi. Plaintiff missed, and his hand went through the Olivers' garage door window.[5]

Victoria claims plaintiff did not react to the deep cut on his wrist. Because plaintiff was not screaming in pain or showing any other emotion after his hand went through the window, Victoria presumed plaintiff was intoxicated.

Plaintiff filed a complaint against the Olivers alleging his injury was the result of a party during which the Olivers allowed underaged teenagers to consume alcohol. Plaintiff argued the Olivers knew, or should have known, there was underage consumption of alcohol on their property that night.

The Olivers filed an answer and third-party complaint against Manzi and others. During the discovery period, the Olivers sought to compel group chat

---

[4] There is disputed testimony whether plaintiff and the other guests were asked to leave the Olivers' property or whether the party continued outside until plaintiff suffered his injury.

[5] As a result, plaintiff required immediate surgery to repair a torn tendon.

text messages exchanged among plaintiff and his friends, including Manzi. The Olivers believed plaintiff and his friends exchanged messages starting the night of the incident, June 18, 2015, and the messages continued during the litigation. In December 2018, the Olivers asked the court to compel production of the messages. The judge decided to hold the demand for the production of documents in abeyance until completion of fact depositions and issued a scheduling order.

After the completion of the depositions, the Olivers again requested the production of the group chat text messages. In an April 12, 2019 order, the judge denied the motion to compel production of the messages. The Olivers filed a motion for reconsideration, which the judge denied in a May 10, 2019 order. The judge found, "[T]here's no doubt there was some . . . generic discussion of the lawsuit. . . . Their testimony . . . is all over the map." He also stated, "No one gave any specifics at all in their deposition testimony as to what, if anything, was discussed, other than the lawsuit in general, during their group chat text messaging back and forth." In denying the motion, the judge concluded:

> [T]he depositions [of the participants in the group text messages] are replete with "I don't know." "I can't recall." "I don't know." "I can't recall." And that is the mishmash of fact testimony we have in this case

6

involving a party of undermined size at someone's house, which apparently involved the consumption of alcohol, the origin of which no one really knows, or it's open to dispute.

On May 10, 2019, the Olivers and Manzi filed separate motions for summary judgment. After considering the papers and hearing oral argument, in separate August 2, 2019 orders, the judge granted summary judgment in favor of the Olivers and dismissed as moot Manzi's motion for summary judgment as to the third-party claims. In his oral statement of reasons, the judge remarked, "[T]here is a myriad of testimony in different directions about a party going on at the Oliver's house." The judge further stated, "It's not really clear how many people are at this party, but it's not a small party. . . . [T]hey may or may not have been drinking beforehand, they may or may not have been drinking at the Oliver's house. There may or may not have been visible alcohol consumed at the Oliver's house . . . ." The judge explained, "The accident in this case had nothing to do with the operation of a motor vehicle. The accident here happened around horseplay between . . . Manzi and [plaintiff]." The judge reiterated there was "a mishmash of testimony . . . of what happened, when, and how it happened, other than there's a general consensus of how the accident happened."

7

The judge relied on this court's decision in Estate of Narleski v. Gomes, 459 N.J. Super. 377 (App. Div. 2019), rev'd, 244 N.J. 199 (2020),[6] in determining the duty owed by the Olivers. According to the judge, there was nothing in the record indicating Bruce knew or should have known underage teenagers were drinking alcohol in the basement. The judge found "no duty on [Bruce's] part to do more than he did" because there was "not enough here to show [him] that [Bruce] knew there was drinking or consented to the drinking." In granting summary judgment to Roberta, the judge held Roberta was "not involved in this case." Regarding the claims against Victoria, the judge noted our decision in Estate of Narleski imposed liability prospectively, commencing 180 days from the issuance of that decision. Therefore, even though she was over the age of eighteen and knew there was underage drinking in her home, the judge found Victoria was not liable and granted summary judgment. Regarding Manzi's motion, the judge stated, "By definition, if the Olivers are not in the case, [Manzi] is not in the case, as well."

On appeal, plaintiff argues there were genuine issues of material fact precluding summary judgment as a matter of law. Plaintiff also contends Bruce

---

[6] After the judge granted summary judgment in favor of the Olivers and after counsel filed briefs in this appeal, the New Jersey Supreme Court reversed the prospective application of our decision in Estate of Narleski.

and Roberta had a duty to supervise underage individuals when it was reasonably foreseeable alcohol would be consumed in their home.  Further, plaintiff asserts the judge erroneously relied on our holding in Estate of Narleski in granting summary judgment to the Olivers, including Victoria, and the New Jersey Supreme Court's reversal of our decision in Estate of Narleski warrants reversal of summary judgment as to the Olivers.  We agree.

We review orders granting summary judgment de novo and apply the same standard at the trial court.  Lee v. Brown, 232 N.J. 114, 126 (2018).  Summary judgment will be granted if, viewing the evidence in the light most favorable to the non-moving party, "there is no genuine issue of material fact and 'the moving party is entitled to a judgment or order as a matter of law.'"  Conley v. Guerrero, 228 N.J. 339, 346 (2017) (quoting Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016)); R. 4:46-2(c).

To determine whether there are genuine issues of material fact, the court must consider "whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party."  Davis v. Brickman Landscaping, Ltd., 219 N.J. 395, 406

(2014) (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995)).  "An issue of material fact is 'genuine only if, considering the burden of persuasion at trial, the evidence submitted by the parties on the motion, together with all legitimate inferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact.'"  Grande v. St. Clare's Health Sys., 230 N.J. 1, 24, 164 (2017) (quoting Bhagat v. Bhagat, 217 N.J. 22, 38 (2014)).

A motion for summary judgment should be denied where the determination of a material disputed fact depends on a credibility determination. See Parks v. Rogers, 176 N.J. 491, 502 (2003).  Moreover, questions of law dependent on the operative facts cannot be decided on summary judgment when those facts are in dispute.  Central Paper Distrib. Servs. v. Int'l Records Storage & Retrieval Serv., 325 N.J. Super. 225, 232 (App. Div. 1999) (holding there were "critical determinants in resolving the issue of law.  The issue was not amenable to resolution on summary judgment because plaintiffs had made an adequate showing of genuine questions of material fact bearing upon the issue, and they were entitled to plenary proof opportunities on the fact questions involved." (citations omitted)).

Applying this standard, we are satisfied the judge erred in awarding summary judgment to the Olivers based on disputed material facts from the deposition testimony. The fact disputes include the following: the number of guests present at the Oliver home that evening; the presence of beer and discarded beer cans in the basement and on the driveway of the Olivers' home when the party moved outdoors; the odor of alcohol throughout the basement; the number of times Bruce walked into the basement to check on the party; whether Bruce spoke to any of the party goers while he was in the basement; the nature of any discussions between Bruce and the party participants, including Victoria; who brought beer or hard liquor into the Oliver home; the presence of red plastic cups, suggesting more than beer was being consumed; the consumption of alcohol by some party goers prior to arriving at the Oliver home; and Victoria's consumption of alcohol.

Based on the "mishmash" of the parties' deposition testimony, these factual questions must be resolved to determine whether the Olivers owed a duty to plaintiff. Viewing the facts in the light most favorable to plaintiff, there is evidence Bruce and Roberta knew, or should have known, there were underage teens openly consuming alcohol at their home. On this summary judgment record, the differing versions of the evening's events present credibility

11

questions for the jury, and a reasonable jury could determine the Olivers knew, or should have known, underage teens were drinking alcohol on their property.

We next consider the granting of summary judgment in favor of Victoria. The judge relied extensively on our decision in Estate of Narleski, determining the imposition of liability on Victoria as an underage social host was to be applied prospectively, and plaintiff's injury occurred prior to our decision in that case. In light of the Supreme Court's decision in Estate of Narleski, we are constrained to reverse the order granting summary judgment to Victoria.

In September 2020, the Court reversed prospective application of our decision in Estate of Narleski, imposing liability on an individual over the age of eighteen but under the age of twenty-one who served alcohol to underage persons. The Court unequivocally held an individual over the age of eighteen but under the age of twenty-one may be civilly liable under common law principles if he or she facilitates the consumption of alcohol by making his or her home available for underage drinking.

The duty to protect others from foreseeable harm is engrained "in the common law, legislative enactments, and public policy." Estate of Narleski, 244 N.J. at 211. "Any common law duty imposed . . . must 'satisf[y] an abiding sense of basis fairness under all of the circumstances in light of considerations

12

of public policy.'" Id. at 213 (second alteration in original) (quoting Hopkins v. Fox & Lazo Realtors, 132 N.J. 426, 439 (1993)). In reviewing sixty years of case law and legislative enactments, the Court held:

> When an underage adult controls a residence or premises where he [or she] lives – if only by having a key to the door – he [or she] has sway over who enters and who remains . . . . When the same underage adult permits underage guests to bring beer, vodka, or other intoxicating beverages into his [or her] home for the purpose of drinking – conduct forbidden under the law – then he [or she] should have some concomitant responsibility to monitor his [or her] guests' activities.
>
> [Id. at 226.]

We reject defense counsel's suggestion the Court's decision in Estate of Narleski applies only to situations where a social host allows an intoxicated guest to drive a motor vehicle. Nothing in the Supreme Court's decision suggests the duty imposed is so limited. Because the facts in Estate of Narleski involved the death of a third-party based on the intoxication of an underaged party guest who was provided alcohol by an underaged social host and then drove while visibly intoxicated, the Court focused its analysis on those specific facts.

We discern no legal distinction regarding injuries resulting from drinking and driving and injuries resulting from drinking and engaging in drunken behaviors likely to cause injury. See Witter by Witter v. Leo, 269 N.J. Super.

A-0159-19

380, 386 (App. Div. 1994) (imposing a duty where the plaintiff suffered an injury attempting to jump from the roof of the defendant's home into a swimming pool where the risk of harm was reasonably foreseeable when alcohol was made available to underage persons). An underage social host "is bound by the social compact. His [or her] age does not make him [or her] immune from legal responsibility for the violation of an established duty that is intended to protect others from foreseeable harm." Estate of Narleski, 244 N.J. at 204. We see no reason to limit the Court's holding to cases involving injuries or death caused by underage drinking and driving.

We next address the August 2, 2019 order denying as moot Manzi's summary judgment motion seeking dismissal of the Olivers' third-party claims. The motion judge addressed only whether the Olivers owed a duty to plaintiff. Because the judge dismissed plaintiff's claims against the Olivers, the judge never addressed Manzi's motion on the merits.

"Mootness is a threshold justiciability determination rooted in the notion that judicial power is to be exercised only when a party is immediately threatened with harm." Betancourt v. Trinitas Hosp., 415 N.J. Super. 301, 311 (App. Div. 2010) (citing Jackson v. Dep't of Corr., 335 N.J. Super. 227, 231 (App. Div. 2000)). "Courts normally will not decide issues when a controversy

A-0159-19

no longer exists, and the disputed issues have become moot." Ibid. (citing DeVesa v. Dorsey, 134 N.J. 420, 428 (1993) (Pollock, J., concurring)).

While Manzi did not cross-appeal from the August 2, 2019 order dismissing the third-party claims, Manzi argues in his merits brief that if we reverse the order granting summary judgment to the Olivers, summary judgment should be entered in his favor. We decline to reach the issue asserted in Manzi's appeal brief because the judge never decided whether the statute of limitations barred the third-party claims against him. On remand, Manzi may renew his motion for dismissal of the third-party claims based on the statute of limitations or any other legal theory. We take no position on the outcome of such a motion.

We next consider the Olivers' cross-appeal. The Olivers contend the judge erred in denying their motion to compel production of the group chat text messages from plaintiff and his friends. We agree.

We review discovery orders for abuse of discretion. Capital Health Sys., Inc. v. Horizon Healthcare Servs., Inc., 230 N.J. 73, 79-80 (2017). "[A]ppellate courts are not to intervene but instead will defer to a trial judge's discovery rulings absent an abuse of discretion or a judge's misunderstanding or misapplication of the law." Ibid. (citing Pomerantz Paper Corp. v. New Cmty. Corp., 207 N.J. 344, 371 (2011)). We "start from the premise that discovery

15

rules 'are to be construed liberally in favor of broad pretrial discovery.'" Id. at 80 (quoting Payton v. N.J. Tpk. Auth., 148 N.J. 524, 535 (1997)). "Our court system has long been committed to the view that essential justice is better achieved when there has been full disclosure so that the parties are conversant with all the available facts." Jenkins v. Rainner, 69 N.J. 50, 56 (1976) (citing In re Sesler, 15 N.J. 393, 405 (1954)). Case law addressing the scope of discovery emphasizes liberality in favor of allowing discovery. See, e.g., McKenny ex rel. McKenny v. Jersey City Med. Ctr., 167 N.J. 359, 370-72 (2001); Shanley & Fisher, P.C. v. Sisselman, 215 N.J. Super. 200, 215-16 (App. Div. 1987).

We are satisfied the judge abused his discretion in denying the motion to compel production of the group chat text messages. Plaintiff and his friends exchanged messages starting the night plaintiff suffered his injury. They continued messaging throughout the course of the litigation, including exchanging messages prior to their depositions. While the judge believed the messages would not be fruitful based on his review of the deposition testimony, the messages may contain information "reasonably calculated to lead to the discovery of admissible evidence . . . ." R. 4:10-2(a). Absent reviewing the messages in camera, we are unable to determine how the judge concluded the

messages were not reasonably calculated to lead to the discovery of potentially admissible evidence.

In denying production of the group chat text messages, the judge also deemed the Olivers' request to be untimely. Having reviewed the record, we note defense counsel requested the documents early in the litigation, and the judge deferred ruling on the issue until the completion of all depositions. Once the depositions were completed, defense counsel timely renewed the request for the messages.

We find no fault with counsel assenting to the judge's request to postpone the motion to compel the production of the messages until the completion of the depositions. Because we remand the matter to the trial court for other reasons, the judge should reconsider the Olivers' request for production of the group chat text messages anew without regard to the timing of the request. On remand, the parties may assert alternate grounds in support of denial of the request to produce the messages.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

17