SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court. In the interest of brevity, portions of an opinion may not have been summarized.

**Estate of Brandon Tyler Narleski v. Nicholas Gomes** (A-9/10-19) (083169)

**Argued March 30, 2020 -- Decided September 17, 2020**

**ALBIN, J., writing for the Court.**

The issue before the Court is whether the common law imposes a duty on underage adults -- over the age of eighteen but under twenty-one -- to refrain from making their homes a safe haven for underage guests to consume alcoholic beverages and, if so, the standard for liability if an underage guest, who becomes intoxicated, afterwards drives a motor vehicle and injures or kills a third party.

Nineteen-year-old Mark Zwierzynski permitted underage adult friends to consume alcoholic beverages in his home. Nineteen-year-old Brandon Tyler Narleski and twenty-year-old Nicholas Gomes left the home severely intoxicated. Shortly afterwards, Gomes lost control of his vehicle and crashed. Narleski died at the scene. Gomes's blood alcohol concentration was twice the legal limit.

Narleski's parents filed a wrongful death action against Gomes, Gomes's parents, and Amboy Food Liquor and News (Amboy), where the underage Narleski purchased the alcohol. In turn, Amboy filed a third-party complaint against Zwierzynski. The trial court granted Zwierzynski's motion for summary judgment, finding that he did not have a duty to supervise his friends. The Appellate Division affirmed, 459 N.J. Super. 377, 399 (App. Div. 2019), but set forth a new rule of law to apply purely prospectively that an underage adult "shall owe a common law duty to injured parties to desist from facilitating the drinking of alcohol by underage adults in his place of residence, regardless of whether he owns, rents, or manages the premises." Id. at 398. The Court granted Zwierzynski's petition for certification and Amboy's cross-petition. 239 N.J. 493-94 (2019).

**HELD:** An underage adult defendant may be held civilly liable to a third-party drunk driving victim if the defendant facilitated the use of alcohol by making his home available as a venue for underage drinking, regardless of whether he is a leaseholder or titleholder of the property; if the guest causing the crash became visibly intoxicated in the defendant's home; and if it was reasonably foreseeable that the visibly intoxicated guest would leave the residence to operate a motor vehicle

1

and cause injury to another.  The duty the Court recognizes today was foreshadowed by precedent and therefore will apply in the case of Zwierzynski.

1.  Six decades ago, in Rappaport v. Nichols, the Court recognized a common law cause of action against licensed tavern owners who knowingly serve alcohol to minors or intoxicated patrons who then negligently drive vehicles causing injury to third-party victims.  31 N.J. 188, 202-05 (1959).  The Appellate Division in Linn v. Rand extended the rationale of Rappaport to homeowner social hosts.  140 N.J. Super. 212 (App. Div. 1976).  The Linn court held that the social host could be held liable in negligence for the injuries suffered by a third-party victim if the host served alcohol to a visibly intoxicated underage guest, knowing that the guest was unfit and about to drive and that an accident was reasonably foreseeable.  Id. at 217, 219.  In the seminal case of Kelly v. Gwinnell, this Court expressly approved of Linn and expanded the doctrine of social host liability to a private residence where an adult host "serves liquor to an adult social guest, knowing both that the guest is intoxicated and will thereafter be operating a motor vehicle."  96 N.J. 538, 547-48 (1984).  In that circumstance, the Court held, the social host will be "liable for injuries inflicted on a third party as a result of the negligent operation of a motor vehicle by the adult guest when such negligence is caused by the intoxication."  Id. at 548.  (pp. 17-21)

2.  The Legislature largely codified Kelly in enacting the Social Host Liability Act, N.J.S.A. 2A:15-5.5 to -5.8.  The Act's text and legislative history refute any argument that the Act was intended to replace or stunt the development of the common law of social host liability in cases where alcohol is provided to intoxicated minors and underage adults.  The Court rejects any interpretation of the Act that would lead to the absurd conclusion that the Legislature intended to create a liability-free zone for underage social hosts who knowingly provide alcohol to visibly intoxicated minors and underage adults who negligently cause injury to third parties as a result of their intoxication.  (pp. 21-24)

3.  The Legislature has expressed the State's strong public policy against underage drinking by adding to the New Jersey Code of Criminal Justice a law punishing those who supply alcohol to minors and those who make property available for underage consumption of alcohol.  Although N.J.S.A. 2C:33-17(a) and (b) create penal sanctions, not tort liability standards, those statutes underscore the policy steps the State has taken to deter those who might be tempted to accommodate or supply alcoholic beverages for underage drinking.  The Court reviews cases in which the Appellate Division touched on the potential relevance of criminal statutes in setting the standard of care for an underage social host who serves alcohol to underage social guests and the continuing development of social host liability law.  The Court also notes that statistics show drunk driving remains a significant public health threat.  (pp. 25-32)

2

4.  In determining whether to recognize a duty to refrain from conduct that poses an unreasonable risk of foreseeable harm to others, the Court considers four factors: "the relationship of the parties, the nature of the attendant risk, the opportunity and ability to exercise care, and the public interest in the proposed solution."  Hopkins v. Fox & Lazo Realtors, 132 N.J. 426, 439 (1993).  Weighing those factors, the Court concludes that an underage social host, who makes his residence available and facilitates underage drinking, has a duty not to knowingly provide or allow self-service of alcohol to a visibly intoxicated guest and, if a guest becomes visibly intoxicated, to take reasonable steps to prevent the guest from operating a motor vehicle.  (pp. 32-39)

5.  The Court accordingly establishes the following rule.  A plaintiff injured by an intoxicated underage social guest may succeed in a cause of action against an underage social host if the plaintiff can prove by a preponderance of the evidence the following:  (1) The social host knowingly permitted and facilitated the consumption of alcoholic beverages to underage guests in a residence under his control.  This element does not require that the social host be a leaseholder or titleholder to the property.  It is enough that the social host has the ability and apparent authority to give others access to the property; (2) The social host knowingly provided alcohol to a visibly intoxicated underage guest or knowingly permitted the visibly intoxicated underage guest to serve himself or be served by others.  It is no defense that the underage guests bought and brought the alcoholic beverages that they or others consumed; (3) The social host knew or reasonably should have known that the visibly intoxicated social guest would leave the premises and operate a motor vehicle and therefore would foreseeably endanger the lives and property of others; (4) The social host did not take any reasonable steps to prevent the intoxicated guest from getting behind the wheel of the vehicle; and (5) The social guest, as a result of intoxication facilitated by the social host, negligently operated a vehicle and proximately caused injury to a third party.  (pp. 39-40)

6.  That rule was foreshadowed and is the logical extension of the Court's common law jurisprudence and legislative enactments aimed at combatting drunk driving and providing fair compensation for its victims.  Applying the duty here is also consistent with the usual rule that the prevailing party who brings a claim that advances the common law should receive the benefit of his efforts.  Based on the record before the Court, Zwierzynski is not entitled to summary judgment as a matter of law.  There are material issues of disputed fact that can be resolved only by a jury.  (pp. 40-41)

**REVERSED and REMANDED to the trial court.**

**CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, PATTERSON, FERNANDEZ-VINA, and SOLOMON join in JUSTICE ALBIN's opinion.**

3

SUPREME COURT OF NEW JERSEY

A-9/10 September Term 2019

083169

Estate of Brandon Tyler Narleski,
deceased by Administrator ad Prosequendum,
John A. Narleski and Lori Anniello-Narleski,
and John A. Narleski, individually,

Plaintiffs,

v.

Nicholas Gomes, Orquivanes Gomes,
and Sergio Gomes,

Defendants,

and

Amboy Food Liquor and News Inc.,
a/k/a Krauszers, and Krauszers Food and
Liquor, Inc., a/k/a Krauszers Food & Liquor, Inc.,

Defendants/Third-Party
Plaintiffs/Respondents/Cross-Appellants,

v.

Mercedes Apraez and Zdzislaw Zwierzynski,

Third-Party Defendants,

and

Mark Zwierzynski,

Third-Party Defendant-Appellant/Cross-Respondent.

1

On certification to the Superior Court,
Appellate Division, whose opinion is reported
at 459 N.J. Super. 377 (App. Div. 2019).

| Argued | Decided |
| March 30, 2020 | September 17, 2020 |

Russell Macnow argued the cause for appellant/cross-respondent (Russell Macnow, on the briefs).

Mark R. Scirocco argued the cause for respondents/cross-appellants (Law Offices of Robert A. Scirocco, attorneys; Mark R. Scirocco and Robert A. Scirocco, on the briefs).

Jeffrey S. Jacobson argued the cause for amici curiae New Jersey Civil Justice Institute and American Property Casualty Insurance Association (Faegre Drinker Biddle & Reath, attorneys; Jeffrey S. Jacobson on the brief).

JUSTICE ALBIN delivered the opinion of the Court.

The deterrence of drunk driving has been a preeminent policy goal of legislative enactments and our common law for many decades. Nonetheless, drunk driving remains one of the major causes of carnage on our highways and roadways. To address this seemingly intractable societal problem, statutory schemes and the common law generally impose civil liability on taverns and social hosts who serve or facilitate the service of alcohol to visibly intoxicated customers and guests who then get into their vehicles and maim or kill others.

2

Under our statutes and case law, a social host over the age of twenty-one has a duty not to serve alcohol to a visibly intoxicated guest, either an adult or a minor, if it is reasonably foreseeable the guest is about to drive. This case presents a variation on that theme. Does a young adult, over the age of eighteen but under the age of twenty-one -- an adult under the lawful drinking age -- have a duty not to facilitate the service of alcohol to a visibly intoxicated underage guest in his home if the guest is expected to operate a motor vehicle?

In this wrongful death case, nineteen-year-old Mark Zwierzynski -- a third-party defendant -- permitted underage adult friends to bring into his home alcoholic beverages, which they consumed while his parents were not there. Based on the summary judgment record before us, two of Zwierzynski's friends, nineteen-year-old Brandon Tyler Narleski and twenty-year-old Nicholas Gomes, left the home severely intoxicated and got into Gomes's car. Gomes drove away and, shortly afterwards, lost control of the vehicle and crashed into a concrete road divider. Narleski was ejected from the vehicle and died at the scene.

The trial court determined that Zwierzynski -- despite providing his home as a drinking venue and arguably facilitating the excessive use of alcohol -- owed no legal duty to Narleski because of Gomes's intoxication.

3

Accordingly, the trial court dismissed the third-party action against Zwierzynski.

The Appellate Division affirmed the dismissal of the complaint against Zwierzynski. Estate of Narleski v. Gomes, 459 N.J. Super. 377, 399 (App. Div. 2019). It nevertheless declared that, going forward, an underage adult "shall owe a common law duty to injured parties to desist from facilitating the drinking of alcohol by underage adults in his place of residence, regardless of whether he owns, rents, or manages the premises." Id. at 398.

We now hold that an underage adult defendant may be held civilly liable to a third-party drunk driving victim if the defendant facilitated the use of alcohol by making his home available as a venue for underage drinking, regardless of whether he is a leaseholder or titleholder of the property; if the guest causing the crash became visibly intoxicated in the defendant's home; and if it was reasonably foreseeable that the visibly intoxicated guest would leave the residence to operate a motor vehicle and cause injury to another. An underage adult, by law, may sue and be sued, may drive a motor vehicle, and has the same civil obligations as any other citizen. He too is bound by the social compact. His age does not make him immune from legal responsibility for the violation of an established duty that is intended to protect others from foreseeable harm.

4

The duty we recognize today was foreshadowed by our precedents and therefore will apply in the case of Zwierzynski. Applying the duty here is also consistent with the usual rule that the prevailing party who brings a claim that advances the common law should receive the benefit of his efforts.

We therefore reverse the Appellate Division, vacate the order of summary judgment dismissing the third-party claim against Zwierzynski, and remand for proceedings consistent with this opinion.

I.

A.

Narleski's parents, individually and on behalf of his estate, filed a wrongful death action in the Superior Court, Law Division. They named as defendants Nicholas Gomes, Gomes's parents, and Amboy Food Liquor and News (Amboy), also known as Krauszers Food & Liquor Store, where the underage Narleski purchased the alcohol consumed in Zwierzynski's home. In turn, Amboy filed a third-party complaint against Zwierzynski and his parents seeking contribution pursuant to the Joint Tortfeasors Contribution Act. The third-party complaint alleged that Zwierzynski and his parents, as social hosts, negligently supervised their guests, particularly Narleski and Gomes.

5

Narleski's parents settled their claims against Gomes, his parents, and Amboy. Third-party defendants Zwierzynski and his parents moved for summary judgment against third-party plaintiff Amboy.

This appeal comes to us from a grant of summary judgment in favor of Zwierzynski and his parents. When reviewing a motion for summary judgment, we apply the same standard as the trial court: we view the evidence in the light most favorable to the non-moving party. Harz v. Borough of Spring Lake, 234 N.J. 317, 329 (2018). In reviewing the summary judgment record, we must give Amboy "the benefit of the most favorable evidence and most favorable inferences drawn from that evidence." Gormley v. Wood-El, 218 N.J. 72, 86 (2014); see also R. 4:46-2(c).

In that light, we present the relevant portions of the summary judgment record -- deposition testimony and police reports generated during the criminal investigation of the crash.

### B.

In the late afternoon of November 9, 2014, Zwierzynski, Narleski, nineteen-year-old Xavier Pinto, and twenty-year-old Zachary Johnson drove in Johnson's car to Krauszers Food & Liquor Store in South Amboy to purchase alcoholic beverages. Zwierzynski and Narleski left the car and entered the store, where Narleski -- who sported a beard and looked older than his friends

6

-- paid for three twenty-four-ounce cans of beer, a 1.75-liter bottle of vodka, and a two-liter bottle of Sprite. The store clerk did not ask Narleski for identification.[1] The sale of alcohol to underage adults is prohibited by law, N.J.S.A. 33:1-77; N.J.A.C. 13:2-23.1(a), and the consumption of alcohol by underage adults is prohibited as well, N.J.S.A. 9:17B-1(b); N.J.S.A. 2C:33-15.

The four underage friends then travelled to Zwierzynski's house in Sayreville, arriving at approximately 7:00 p.m. Zwierzynski lived there with his mother, but she was not home at the time, and his father lived elsewhere. The home was jointly owned by Zwierzynski's father and mother, who were separated.

Zwierzynski brought his friends to his upstairs bedroom, where they began drinking, playing video games, and watching television. Pinto and Narleski each drank two to three cups of vodka. Pinto became tired, went downstairs, and fell asleep on a couch. That evening, Narleski texted his friend Gomes and told him to come over to Zwierzynski's house, where they were drinking. Gomes arrived in his 1997 Mercedes-Benz at approximately 9:00 p.m. Pinto was already laid out on the downstairs couch when Gomes entered the house.

---

[1] Zwierzynski and Narleski had successfully purchased liquor at that store a number of times before.

7

In the upstairs bedroom, Zwierzynski handed Gomes a cup.  Gomes poured himself approximately two inches of vodka and orange juice and downed the cup.  Then, Gomes poured himself another two inches of vodka and orange juice and downed that cup.[2]  The drinking occurred in the presence of Zwierzynski.[3]  At some point, Narleski and Gomes decided to leave and go to the home of a mutual friend.  By the time they left, Gomes had spent about fifty minutes at Zwierzynski's home.  According to Gomes's testimony, at that point, he had a "buzz" and Narleski was "fairly drunk" and "slurring his words."[4]

Narleski got into the passenger seat of Gomes's Mercedes without strapping on his seat belt, and Gomes drove away.  En route to their friend's home, Gomes sped past a vehicle on U.S. Route 9 and lost control of his Mercedes.  The car crossed multiple lanes of traffic, crashed into the

---

[2]  Gomes also admitted to smoking marijuana earlier in the evening.

[3]  Zachary Johnson told the police that he left Zwierzynski's home about fifteen minutes after Gomes's arrival and did not observe Gomes consume alcohol.

[4]  Zwierzynski's mother arrived home around 10:00 p.m. with Zwierzynski's infant daughter.  The daughter, who lived with her mother, apparently was staying over that evening.  Zwierzynski's mother stated in her deposition that she did not see anyone in the house or know that Zwierzynski's friends had been in his room.  Pinto, however, according to his deposition testimony, was still sprawled out on the couch downstairs and did not awake until 2:00 a.m.

roadway's concrete center divider, and went airborne. Narleski was ejected from the vehicle, which flipped over several times and landed on top of him. Paramedics pronounced Narleski dead at the scene.

A responding police officer detected the odor of alcohol emanating from Gomes. A blood sample was taken from Gomes pursuant to a search warrant.

The records of the Middlesex County Prosecutor's Office indicate that Gomes's blood alcohol concentration (BAC) was approximately .16% at the time of the crash -- a point that Gomes conceded. That BAC is twice the permissible legal limit for an adult of legal drinking age. See N.J.S.A. 39:4-50(a) (making it unlawful to operate a motor vehicle "with a blood alcohol concentration of 0.08% or more"). According to the report of John Brick, PhD, an expert in neuropharmacology, at a .15% BAC, "[m]ost drinkers display classic signs of visible intoxication"; at .10% BAC, "the relative risk for a fatal motor vehicle accident is 82 times greater than compared with sober controls; and at .17% [BAC], that risk is increased to 1,772 times greater as compared with controls." (emphasis added).

Gomes pled guilty to second-degree vehicular homicide, N.J.S.A. 2C:11-5. At his plea hearing, Gomes admitted that he drove under the influence of alcohol and that his intoxicated state, along with his speeding and weaving in

9

and out of traffic, caused the deadly crash. Gomes was sentenced to a seven-year term in state prison.

C.

In granting summary judgment in favor of Zwierzynski's parents, the trial court explained that any duty that "parents [have] to supervise the conduct of their children ends when" they become adults and therefore Zwierzynski's parents had no duty to supervise Zwierzynski.[5] In the case of Zwierzynski's father, the court also noted that he was estranged from his wife, did not live in the Sayreville residence, and "was not in any tangible form related with the present action." In finding that Zwierzynski also was entitled to summary judgment, the court looked to N.J.S.A. 2C:33-17(b), which states that a person commits a disorderly persons offense if he "makes real property owned, leased or managed by him available to" underage adults or minors for the purpose of consuming alcoholic beverages. The court reasoned that Zwierzynski did not own, lease, or manage the property and that, although he "provided his friends with a place to consume alcohol, he did not have a duty to supervise his adult friends during their consumption."

---

[5] The trial court gave its reasons for granting summary judgment, first orally on the record and again in a written opinion when denying a motion for reconsideration. The recitation and quotations here are from the written opinion.

The court denied Amboy's motion for reconsideration and entered final judgment, dismissing both the settled claims and Amboy's third-party claims against Zwierzynski and his parents.

D.

The Appellate Division affirmed the trial court's summary judgment dismissal of Amboy's third-party complaint. Narleski, 459 N.J. Super. at 399. The Appellate Division held that, given the lack of evidence that Zwierzynski's parents knew of or consented to their son's activities on the evening in question, they "had no statutory or common law duty to prevent their adult underage son from allowing his adult underage friends to drink alcohol in their home." Id. at 382. It also held that "no established precedent in New Jersey" imposed on Zwierzynski a duty to prevent his underage friends -- the ones he invited into his home -- from drinking or drinking excessively while in his parents' house. Id. at 382, 397. Thus, under current law, the Appellate Division exonerated Zwierzynski from civil liability for the death of Narleski. Ibid.

The court, nevertheless, determined that exposing a young adult, such as Zwierzynski, to civil liability in the circumstances of this case "would be a logical extension of case law" and "consistent with sound public policy." Id. at 397-98. It refrained from doing so in this case, however, because "imposing

11

upon [Zwierzynski] a novel rule of liability that he might not have reasonably anticipated" would not be equitable. Id. at 398.

The Appellate Division concluded by setting forth a new rule of law to apply purely prospectively -- a new rule that was "a logical extension" of common law precedents on social host liability and "consistent with the policy objectives of related statutes." Ibid. The Appellate Division held that, going forward, "an adult such as Mark Zwierzynski who is under the legal drinking age shall owe a common law duty to injured parties to desist from facilitating the drinking of alcohol by underage adults in his place of residence, regardless of whether he owns, rents, or manages the premises." Ibid. The court deferred the effective date of its "prospective holding for 180 days to enable possible further judicial review or responsive legislation." Id. at 398-99.

We granted Zwierzynski's petition for certification and Amboy's cross-petition. 239 N.J. 493-94 (2019). We also granted the motion of the New Jersey Civil Justice Institute and American Property Casualty Insurance Association to appear as amici curiae.

12

II.

A.

1.

Zwierzynski argues that the Appellate Division erred in imposing a new common law duty on underage adults to refrain from facilitating the consumption of alcoholic beverages in their homes by other underage adults who may foreseeably operate motor vehicles and injure third parties.[6]  That new rule, he maintains, does not advance public policy and "effectively imposes strict liability [on the underage facilitator] if a third party is injured as the result of" alcohol consumption by an underage adult in the home. Zwierzynski challenges the assumption that a new common law duty will deter alcohol consumption by underage adults.  Instead, he posits that such a rule will have the untoward effect of driving underage alcoholic "get-togethers" from a secure residence to less desirable environments, such as parks and abandoned buildings.

---

[6]  It may seem odd that Zwierzynski appeals from a decision that dismissed the action against him.  Nevertheless, because of his status as a party in this case, he is the only person in a position to challenge what he claims is the erroneous imposition of a duty on similarly situated future litigants.  Zwierzynski's challenge is permissible because "[u]nlike the Federal Constitution, there is no express language in New Jersey's Constitution which confines the exercise of our judicial power to actual cases and controversies."  Crescent Park Tenants Ass'n v. Realty Equities Corp. of N.Y., 58 N.J. 98, 107 (1971).

13

Zwierzynski asserts that nothing in the penal statute referred to by the Appellate Division, N.J.S.A. 2C:33-17, which makes it unlawful to provide alcohol to underage drinkers under defined circumstances, suggests that the Legislature intended to create a tort duty. He claims, moreover, that the appellate court's reliance on Thomas v. Romeis is misplaced because that case upheld the principle that social host liability will attach when alcoholic beverages are provided to a visibly intoxicated minor who injures a third party, citing 234 N.J. Super. 364, 365-66 (App. Div. 1989), whereas here the Appellate Division's tort duty is triggered by the service of any alcohol to an underage adult.

Following the approach in Thomas, Zwierzynski alternatively argues that if a new duty is to be imposed on underage adults, it should be limited to barring the service of alcohol to visibly intoxicated individuals.

Finally, he submits that the Appellate Division correctly determined that any new legal duty imposed on underage adults should be applied purely prospectively.

2.

Amici Curiae New Jersey Civil Justice Institute and American Property Casualty Insurance Association filed a joint brief that echoes many of the themes in Zwierzynski's arguments. Amici principally argue that the

14

Appellate Division fashioned a new legal duty by imposing liability on an underage adult social host where the host does not serve alcohol but makes his home available for underage drinking and where an underage intoxicated adult guest ultimately drives drunk and causes injuries. According to amici, "[t]he Legislature indisputably has not imposed liability" on underage adults in circumstances as presented in this case, and "the judiciary should respect the Legislature's policy choices."

B.

Amboy argues that the Appellate Division erred by not applying to this case the new duty -- the duty that an underage adult not facilitate alcohol consumption by other underage adults by making his residence a venue for drinking. Amboy claims that the Appellate Division's failure to give Amboy the benefit of that ruling is inconsistent with the court's "clear articulation of the duty" and its finding that the source of the duty is rooted in the common law, legislative enactments, and public policy. Amboy further contends that the purely prospective application of the new rule "was made without citation to any legal authority" and conflicts with this Court's imposition of the social host liability rule established in Kelly v. Gwinnell, 96 N.J. 538, 548 (1984), which was applied to the parties in that case on the basis that to "deprive the plaintiff of any benefit resulting from her own efforts" would discourage other

15

individuals from seeking to establish new common law rights that are just, quoting id. at 551.

According to Amboy, Zwierzynski's conduct falls squarely within the proscribed ambit of N.J.S.A. 2C:33-17 and within the reasoning of Dower v. Gamba, 276 N.J. Super. 319, 326-28 (App. Div. 1994), which held that under the Social Host Liability Act, N.J.S.A. 2A:15-5.6(b), liability may attach to a social host who throws a party and allows guests to serve themselves and drink to the point of visible intoxication. In addition, Amboy asserts that the Legislature has not fully occupied the field of social host liability and that courts still play a vital role in recognizing the existence of a duty in common law negligence cases.

Finally, Amboy argues that if the common law duty to refrain from making one's home available and facilitating the excessive use of alcohol does not apply here, then the law has carved out a liability-free zone for underage adult hosts who throw parties, permit their underage adult friends to become intoxicated, and allow them to drive and negligently injure and kill third parties.

III.

A.

The primary issue before the Court is whether the common law imposes a duty on underage adults to refrain from making their homes a safe haven for underage guests to consume alcoholic beverages and, if so, the standard for liability if an underage guest, who becomes intoxicated, afterwards drives a motor vehicle and injures or kills a third party. See Acuna v. Turkish, 192 N.J. 399, 413 (2007) ("The recognition or establishment of a legal duty in tort law is generally a matter for a court to decide."). In construing the common law, our standard of review is de novo. Qian v. Toll Bros. Inc., 223 N.J. 124, 135 (2015). We therefore owe no deference to the interpretative analysis of either the trial court or Appellate Division, unless we are persuaded by the reasoning of those courts. See ibid.

B.

Any common law duty imposed by this Court must "satisf[y] an abiding sense of basic fairness under all of the circumstances in light of considerations of public policy." Hopkins v. Fox & Lazo Realtors, 132 N.J. 426, 439 (1993). In addressing whether a new duty meets the basic fairness test and advances an enlightened public policy, Justice Holmes's reminder that "a page of history is

17

worth a volume of logic," <u>N.Y. Tr. Co. v. Eisner</u>, 256 U.S. 345, 349 (1921), directs us to look to the historical antecedents for such a duty in this case.

Intoxicated driving remains one of the preeminent public safety threats in New Jersey, as evidenced by the mayhem caused on our highways by drunk drivers to this day. N.J. Office of the Att'y Gen., Div. of Highway Traffic Safety, State of New Jersey Highway Safety Plan 25 (2018), https://www.state.nj.us/lps/hts/downloads/HSP_2018_web.pdf ("Driving while intoxicated remains a major factor in contributing to fatalities, crashes and injuries on the State's roadways."). This State's public policy of imposing severe sanctions on drunk drivers and of prohibiting the service of alcohol to minors and visibly intoxicated adults has deep roots in our law. The common law has been in the vanguard in addressing the acute problem of underage drinking and drunk driving.

Six decades ago, in <u>Rappaport v. Nichols</u>, this Court recognized a common law cause of action against licensed tavern owners who knowingly serve alcohol to minors or intoxicated patrons who then negligently drive vehicles causing injury to third-party victims. 31 N.J. 188, 202-05 (1959). In that case, several licensed taverns served alcohol to a young adult, just eighteen years old, who left the last tavern intoxicated, drove negligently, and killed another driver. <u>Id.</u> at 192-93.

New Jersey's statutory and regulatory scheme barred taverns from serving alcohol to minors and those "apparently" intoxicated. Id. at 201-02. We imposed a common law duty on taverns to refrain from serving alcohol to minors and intoxicated patrons and allowed innocent third-party victims to sue taverns breaching that duty to "afford a fairer measure of justice" and to "strengthen and give greater force to the enlightened statutory and regulatory precautions." Id. at 205. We concluded that placing on taverns the burden of exercising due care was justifiable given the "frightening consequences" of drunk driving. Ibid.

The Appellate Division in Linn v. Rand extended the rationale of Rappaport to homeowner social hosts. 140 N.J. Super. 212 (App. Div. 1976). In that case, the homeowner allegedly served alcohol to an underage guest and permitted her to drive home intoxicated. Id. at 214. The intoxicated underage guest negligently drove her vehicle, striking and seriously injuring a pedestrian child. Ibid. In reversing the summary judgment order, which dismissed the case against the homeowner, the Appellate Division stated that it would make little sense to impose a duty to exercise care on the licensee in Rappaport but not the "social host who may be guilty of the same wrongful conduct." Id. at 217. The Linn court held that the social host could be held liable in negligence for the injuries suffered by the child if the host served alcohol to a visibly

19

intoxicated underage guest, knowing that the guest was unfit and about to drive and that an accident was reasonably foreseeable. Id. at 217, 219. The need to impose that new duty, according to the court, was "devastatingly apparent in view of the ever-increasing incidence of serious automobile accidents resulting from drunken driving." Id. at 219.

In the seminal case of Kelly v. Gwinnell, this Court expressly approved of Linn and expanded the doctrine of social host liability to a private residence where an adult host "serves liquor to an adult social guest, knowing both that the guest is intoxicated and will thereafter be operating a motor vehicle." 96 N.J. at 547-48. In that circumstance, the Court held, the social host will be "liable for injuries inflicted on a third party as a result of the negligent operation of a motor vehicle by the adult guest when such negligence is caused by the intoxication." Id. at 548. In writing for the Court, Chief Justice Wilentz stated that "[i]n a society where thousands of deaths are caused each year by drunken drivers, [and] where the damage caused by such deaths is regarded increasingly as intolerable, . . . the imposition of such a duty by the judiciary seems both fair and fully in accord with the State's policy." Id. at 544-45 (footnote omitted). The Court articulated two primary goals in imposing social host liability -- the "fair compensation of victims who are injured as a result of drunken driving" and the deterrence of social hosts from

20

serving alcohol to their visibly intoxicated guests who will later drive.  Id. at 548, 551-52.

The Court rejected the argument that its decision -- a significant but "fairly predictable expansion of liability in this area" -- treaded on matters falling within the legislative domain.  Id. at 552, 555-56.  It reached that conclusion because "[d]efining the scope of tort liability has traditionally been . . . the responsibility of the courts" and the Legislature had not occupied the field.  Id. at 553-56.  The Court did "not perceive the potential revision of cocktail-party customs as constituting a sufficient threat to social well-being to warrant staying [its] hand."  Id. at 555.

Nevertheless, in light of "the lack of precedent anywhere else in the country" for this form of social host liability, the Court determined that "it would be unfair to impose this liability retroactively."  Id. at 551.  The Court, however, applied the new doctrine to the parties in that case because "to do otherwise would not only deprive the plaintiff of any benefit resulting from her own efforts but would also make it less likely that, in the future, individuals will be willing to claim rights, not yet established, that they believe are just." Ibid.

With amendments recommended by the Governor, the Legislature largely codified Kelly in enacting the Social Host Liability Act, N.J.S.A.

21

2A:15-5.5 to -5.8. The Act affords a third party injured by a social host's intoxicated guest -- "a person who has attained the legal age to purchase and consume alcoholic beverages" -- a cause of action against the social host if:

> (1) The social host willfully and knowingly provided alcoholic beverages either:
>
>> (a) To a person who was visibly intoxicated in the social host's presence; or
>>
>> (b) To a person who was visibly intoxicated under circumstances manifesting reckless disregard of the consequences as affecting the life or property of another; and
>
> (2) The social host provided alcoholic beverages to the visibly intoxicated person under circumstances which created an unreasonable risk of foreseeable harm to the life or property of another, and the social host failed to exercise reasonable care and diligence to avoid the foreseeable risk; and
>
> (3) The injury arose out of an accident caused by the negligent operation of a vehicle by the visibly intoxicated person who was provided alcoholic beverages by a social host.
>
> [N.J.S.A. 2A:15-5.6(b).]

By design, the Social Host Liability Act did not address the service of alcohol to visibly intoxicated underage guests or in any way disapprove of

22

Linn.[7]  The Act defines "social host," in relevant part, as a person "who legally provides alcoholic beverages to another person who has attained the legal age to purchase and consume alcoholic beverages."  N.J.S.A. 2A:15-5.5.  Notably, only a person over the age of twenty-one may "legally" provide alcoholic beverages to another.  The Act's definition of social host also removes underage drinkers from the reach of the Act.  See Morella v. Machu, 235 N.J. Super. 604, 609 (App. Div. 1989) (noting that the Act "only sets the standards for the liability of social hosts 'to a person who has attained the legal age'" (quoting N.J.S.A. 2A:15-5.5 to -5.8)).

Indeed, the Governor's Reconsideration and Recommendation Statement attached to the bill -- which, with the Governor's revisions, became the Social Host Liability Act -- noted that the bill's legislative history indicated that it was "not intended to affect the current law regarding social hosts who serve individuals under the legal age," Governor's Reconsideration and Recommendation Statement to S. Comm. Sub. S. 1152 & 545 (Nov. 9, 1987) (emphasis added), thus leaving Linn intact.  The Act's text and legislative

---

[7]  The Act includes this significant qualifying language:  "No social host shall be held liable to a person who has attained the legal age to purchase and consume alcoholic beverages for damages suffered as a result of the social host's negligent provision of alcoholic beverages to that person."  N.J.S.A. 2A:15-5.7.  Thus, the intoxicated social guest who causes injury to himself has no recourse against the social host.

23

history refute any argument that the Act was intended to replace or stunt the development of the common law of social host liability in cases where alcohol is provided to intoxicated minors and underage adults. See Morella, 235 N.J. Super. at 609 ("Recently enacted 'social host' legislation strongly suggests that principles of liability for permitting minors to obtain alcoholic beverages is a subject for common-law development by the courts.").[8]

Last, the Act is the "exclusive civil remedy" for accident victims injured by the negligent provision of alcohol "to <u>a person who has attained the legal age to purchase and consume alcoholic beverages</u>." N.J.S.A. 2A:15-5.6(a) (emphasis added). We reject any interpretation of the Social Host Liability Act that would lead to the absurd conclusion that the Legislature intended to create a liability-free zone for underage social hosts who knowingly provide alcohol to visibly intoxicated minors and underage adults who negligently cause injury to third parties as a result of their intoxication.

---

[8] In 1987, the Legislature effectively codified <u>Rappaport</u> by enacting the Licensed Alcoholic Beverage Server Fair Liability Act (the Dram Shop Act), N.J.S.A. 2A:22A-1 to -7. <u>See</u> <u>L.</u> 1987, <u>c.</u> 152; <u>Steele v. Kerrigan</u>, 148 N.J. 1, 15 (1997) ("The Licensed Server Liability Act is a codification of the common-law 'dram shop' doctrine that evolved in a series of cases beginning with <u>Rappaport v. Nichols</u>, 31 N.J. 188 (1959)."). That Act imposes liability on an alcoholic beverage licensee who serves alcohol to a visibly intoxicated person, or to a minor "under circumstances where the server knew, or reasonably should have known, that the person served was a minor." N.J.S.A. 2A:22A-5(b).

24

## C.

The Legislature has expressed the State's strong public policy against underage drinking by adding to the New Jersey Code of Criminal Justice a law punishing those who supply alcohol to minors and those who make property available for underage consumption of alcohol. Statement to S. 2312 2 (L. 1985, c. 311); Sponsor's Statement to S. 1234 (L. 1995, c. 31). N.J.S.A. 2C:33-17(a) states that it is a disorderly persons offense if an individual "purposely or knowingly offers or serves or makes available an alcoholic beverage to a person under the legal age for consuming alcoholic beverages or entices or encourages that person to drink an alcoholic beverage." N.J.S.A. 2C:33-17(b) states that it is a disorderly persons offense if an individual "makes real property owned, leased or managed by him available to . . . another person with the purpose that alcoholic beverages will be made available for consumption by . . . persons who are under the legal age for consuming alcoholic beverages."[9]

A violation of either statute occurs if an underage person is supplied with or consumes any amount of alcohol. Importantly, the statutes create penal sanctions, not tort liability standards. The Legislature knows how to

---

[9] N.J.S.A. 2C:33-17(a) and (b) are subject to parental and religious observance and ceremony exceptions.

construct tort liability schemes, as evidenced by both the Social Host Liability Act and the Dram Shop Act.[10]

We need not determine whether the conduct in this case fits within the four corners of either statute. Those statutes, however, underscore the policy steps the State has taken to deter those who might be tempted to accommodate or supply alcoholic beverages for underage drinking.

D.

After passage of N.J.S.A. 2C:33-17(a), the Appellate Division touched on the potential relevance of that disorderly persons statute in setting the standard of care for an underage social host who serves alcohol to underage social guests, see Thomas, 234 N.J. Super. at 365, 374, and the importance of that statute in the continuing development of social host liability law, see Morella, 235 N.J. Super. at 609-10.

In Thomas, the underage social host allegedly provided alcohol to his intoxicated minor guest, who drove and got into an accident, injuring her intoxicated passenger. 234 N.J. Super. at 366-68. The Appellate Division pointedly observed that although the twenty-year-old social host "was a minor for the purpose of purchasing alcoholic beverages, he was, nonetheless, an

_____

[10] The violation of a criminal statute, however, may be "evidence" of the breach of a duty of care. See Alloway v. Bradlees, Inc., 157 N.J. 221, 236 (1999).

26

adult with respect to 'basic civil and contractual rights and obligations,' including the right to 'sue, be sued and defend civil actions.'" Id. at 370 (quoting N.J.S.A. 9:17B-1(a)).

The plaintiff passenger sued the social host, contending on appeal "that service of alcohol to a minor leading to the minor's intoxication is all that is necessary to establish liability against a social host." Id. at 369. The trial judge declined to charge that proposition of law, as reflected in N.J.S.A. 2C:33-17(a), and instead instructed the jury, consistent with Kelly, that the social host's liability depended on whether he knew his minor guest was visibly intoxicated when he served her alcohol. Id. at 368-69, 374-75.

In view of the effective date of N.J.S.A. 2C:33-17(a), one week after the accident, the Thomas court discerned no intent in that "legislation to justify using the conduct it proscribes as a tort standard." Id. at 374. On that basis, the Appellate Division agreed that the trial judge properly charged the jury. Id. at 374-75.

In Morella, eighteen-year-old Joseph Machu became intoxicated at a house party thrown by at least one of the teenage children of Mr. and Mrs. Kamatoy, who were away on vacation and who left a twenty-year-old supervisor in charge of their three teenage children. 235 N.J. Super. at 606-08. The intoxicated Machu drove and got into an accident, injuring the plaintiff,

who was a passenger in another vehicle.  Ibid.  The plaintiff sued, among others, the Kamatoy parents for negligent supervision, as well as their seventeen-year-old son and the twenty-year-old supervisor, on the basis of social host liability.  Id. at 606-07, 611 n.3.  The Appellate Division reversed the grant of summary judgment in favor of those defendants.  Id. at 606-07.  It concluded that in light of the legislative policy expressed in the Social Host Liability Act, the Dram Shop Act, and N.J.S.A. 2C:33-17, "the Kamatoys as parents or their agents had a duty to the public to exercise reasonable care to arrange for competent supervision of their teenagers while they were . . . on vacation."  Id. at 611.  The Appellate Division also made clear that the Kamatoys' seventeen-year-old son and the twenty-year-old supervisor were not immune from potential civil liability as social hosts.  Id. at 611 n.3.

Another informative case is Dower v. Gamba, in which the Appellate Division determined that, in a party setting, a host does not have to directly serve alcohol to a guest for the purpose of providing alcohol within the meaning of the Social Host Liability Act.  276 N.J. Super. at 322, 327-28.  In that case, based on the summary judgment record, twenty to thirty-five persons attended a party thrown by the four Gamba brothers.  Id. at 322-23.  Some of the persons attending the party brought beer to the Gamba house and placed the beer in a "kiddie pool," which the Gambas stocked with ice.  Id. at 323.

28

Sheila Dower stated that one of the Gamba brothers provided "a good amount of the beer" at the party. Ibid. Guests helped themselves to beer from the kiddie pool. Ibid. Mathew Kohaut, who was of age to drink, arrived with two six-packs of beer, which he put in the kiddie pool. Id. at 322-23. He remained at the party for six hours. Id. at 323. According to Theresa Dower, Kohaut was "chugging entire cans of beer" and "was obviously and visibly intoxicated." Ibid.

Shortly before 1:00 a.m., the underage Dower sisters were passengers in Kohaut's car when he crashed into a tree, injuring the sisters. Id. at 322. Kohaut's BAC was .17%. Ibid. Based on the summary judgment record, the trial judge dismissed the Dower sisters' social host liability lawsuit against the Gamba brothers because they failed to prove that the brothers "actually served beer to Kohaut." Id. at 324. In the trial judge's view, "[i]f the beer is on the table, there is no service" and no "social guest problem." Id. at 327.

The Appellate Division reversed the grant of summary judgment, concluding that "the Legislature did not require that a plaintiff show that the social host directly served the visibly intoxicated driver who negligently injures another." Ibid. According to the Appellate Division, "[t]he focus of N.J.S.A. 2A:15-5.6(b) is not on the means used to provide the alcoholic beverage to the potential operator of a vehicle." Ibid. It rejected "[t]he

29

proposition that the Legislature intended that a social host may escape responsibility for the negligent provision of alcoholic beverages to an obviously intoxicated person merely by 'placing the booze on a table' and walking away." Ibid.  The Appellate Division held that it was for the jury to determine "whether the Gambas willfully and knowingly provided alcoholic beverages to Kohaut, while he was visibly intoxicated, under circumstances which created an unreasonable risk of foreseeable harm to the life or property of another." Id. at 328 (citing N.J.S.A. 2A:15-5.6).

IV.

Drunk driving remains a significant public health threat, although various initiatives have likely contributed to the reduction of drunk driving deaths on our highways.  Those initiatives include the strengthening of drunk driving laws by increasing penalties and including rehabilitative and preventative measures, see, e.g., L. 2019, c. 248; L. 2000, c. 83; L. 1982, c. 53; L. 1977, c. 29; the enactment of N.J.S.A. 2C:33-17, which prohibits making alcohol available to minors; common law decisions, such as Rappaport, Linn, and Kelly, which imposed duties on licensed bars and social hosts not to serve intoxicated adults or underage adults; the passage of the Social Host Liability Act and the Dram Shop Act; and an increased public consciousness about the dangers of drinking and driving.  Since 1982, drunk driving fatalities on our

30

nation's roadways have decreased by fifty percent,[11] and from 2009 to 2018, alcohol-impaired driving fatalities in New Jersey have decreased overall by nearly sixteen percent and for those under the age of twenty-one by over twenty-three percent.[12]

Despite those significant strides, the number of crashes, injuries, and deaths caused by drunk drivers, including underage adults, is still terrifyingly high. In 2018, there were 564 traffic fatalities in New Jersey: 159 were alcohol related, 125 involved drivers with a BAC of .08% or higher,[13] and, of that number, 13 involved drivers under the age of twenty-one.[14] But fatalities are but one measure of the grave harm caused by drinking and driving. In 2000, approximately 32,940 crashes in New Jersey involved alcohol, injuring

---

[11] Found. for Advancing Alcohol Responsibility, <u>Drunk Driving Fatality Statistics</u>, https://www.responsibility.org/alcohol-statistics/drunk-driving-statistics/drunk-driving-fatality-statistics (last visited Aug. 14, 2020).

[12] Found. for Advancing Alcohol Responsibility, <u>State Map: New Jersey</u>, https://www.responsibility.org/alcohol-statistics/state-map/state/new-jersey (last visited Aug. 14, 2020).

[13] Nat'l Highway Traffic Safety Admin., Nat'l Ctr. for Statistics & Analysis, <u>Traffic Safety Facts: 2018 Data</u> 6 (June 2020), https://crashstats.nhtsa.dot.gov/Api/Public/ViewPublication/812917.

[14] Found. for Advancing Alcohol Responsibility, <u>2018 State of Drunk Driving Fatalities in America</u> 6, https://www.responsibility.org/wp-content/uploads/2020/02/2018_Drunk-Driving-Stats-Book.pdf.

an estimated 11,200 people and killing 319 people.[15]  Drivers between the ages of sixteen and twenty are seventeen times more likely to die in a crash when they have a BAC of .08% or higher.[16]

Those grim statistics raise important public policy concerns as we decide whether to impose a duty on an underage adult not to make his residence a forum where guests can get drunk, drive, and then wreak havoc on our roadways.

V.

The assessment of whether a person has a duty to refrain from conduct that poses an unreasonable risk of foreseeable harm to others is a "value judgment" based on public policy and notions of basic fairness -- did the person owe the injured party a duty of reasonable care?  See Kelly, 96 N.J. at 543-44.  In determining whether to recognize a duty, we ordinarily consider four factors:  "the relationship of the parties, the nature of the attendant risk, the opportunity and ability to exercise care, and the public interest in the proposed solution."  Hopkins, 132 N.J. at 439; see also Kelly, 96 N.J. at 544.

---

[15]  Am. Safety Council, Impaired Driving, https://www.safemotorist.com/ NewJersey/Driving/impaired_driving (last visited Aug. 14, 2020).

[16]  Ctr. for Disease Control & Prevention, Teen Drinking and Driving:  A Dangerous Mix (Oct. 2012), https://www.cdc.gov/vitalsigns/ teendrinkinganddriving/index.html.

In this case, Zwierzynski was a social host who controlled access to his house, even though his name was not on the deed to the home. He invited his underage friends into his residence so that, within its secure confines, he and they could consume alcohol -- an activity forbidden under the law, N.J.S.A. 9:17B-1, and an activity they could not engage in publicly, see N.J.S.A. 2C:33-15(a) (making it a disorderly persons offense for an underage person to consume alcohol in public). Although Zwierzynski may not have been his brother's keeper, he did have a responsibility not to lend his home for an illicit purpose -- underage drinking -- even if his conduct did not squarely constitute a violation of N.J.S.A. 2C:33-17 of the Criminal Code. For purposes of N.J.S.A. 2C:33-17, Zwierzynski may not have directly served or made available alcohol to underage guests or owned, leased, or managed property used for underage drinking. But tort liability does not depend on whether a person's conduct is proscribed by a penal statute. A person who drives negligently while intoxicated and causes death is subject to a civil wrongful death suit, see Lee v. Kiku Rest., 127 N.J. 170, 185-86 (1992), but only if he drives recklessly while intoxicated is he answerable for vehicular homicide, see N.J.S.A. 2C:11-5. Tort standards and criminal statutes are not necessarily

33

co-extensive and sometimes advance similar yet different goals. See State v. Burkert, 231 N.J. 257, 286-87 (2017).

That a guest bought and brought the alcohol into Zwierzynski's room is little different from the guests who put the beer in the kiddie pool in Dower for others to consume. See 276 N.J. Super. at 323. Zwierzynski supplied the cups just as the Gambas in Dower supplied the ice for the kiddie pool. See ibid. Unlike in Dower, where twenty to thirty-five guests were roaming about in a backyard, Zwierzynski had a few guests in close quarters and could reasonably observe the consumption of alcohol in his room and its effects on his friends. See ibid. Like the Appellate Division in Dower, we reject the notion that "[i]f the beer is on the table, there is no service" or "social guest problem." See id. at 327.

Under the law, moreover, Zwierzynski was "an adult with respect to 'basic civil and contractual rights and obligations,' including the right to 'sue, be sued and defend civil actions.'" See Thomas, 234 N.J. Super. at 370 (quoting N.J.S.A. 9:17B-1(a)). All in all, the relationship between Zwierzynski and his guests is indistinguishable from the relationship between the host and guest in Kelly. See 96 N.J. at 547-48.

34

## The nature of the attendant risk.

The statistical evidence reveals the scope of the public-health threat presented by drunk drivers in general and underage drunk drivers in particular. Thousands of crashes -- many fatal -- involve drivers who had been drinking, and too many of those crashes and fatalities involve intoxicated underage drivers. Gomes -- the operator of the car that crashed and killed Narleski -- was driving with a BAC of .16%, which made him somewhere between 82 to 1772 times more likely to be involved in a fatal crash than had he been sober. See supra ___ (slip op. at 9). When a visibly intoxicated guest walks out of a party to drive home or to some other location, the tragic consequences that follow are reasonably foreseeable. The grave risk that drunk drivers pose to unsuspecting and innocent pedestrians and motorists is common knowledge. See Kelly, 96 N.J. at 544-45 (noting that the "social goal" of reducing drunk driving "is practically unanimously accepted by society").

## The opportunity and ability to exercise care.

Even at a party attended by adults, the host has a duty not to provide alcohol to a visibly intoxicated guest who is expected to operate a motor vehicle. N.J.S.A. 2A:15-5.6(b). At a party attended by only underage guests, the person who makes his residence available for the gathering is on notice that the service of alcohol is unlawful per se. See N.J.S.A. 2C:33-17.

Therefore, the first caution in exercising care is to bar the flow of alcohol to underage drinkers. But even if that threshold is crossed, and alcohol is consumed, the social host has the ability to ensure that a guest does not continue to drink to a point of visible intoxication. Last, if a guest is visibly intoxicated, the host has the opportunity to take steps to have the impaired guest driven home or to keep him on the premises. The social host is not powerless to deny his residence as a venue for uncontrolled drinking or to take measures to safeguard an impaired guest from the danger he presents to himself and others.

The public interest in the proposed solution.

An underage adult has all the civil rights and obligations of any other adult -- other than the privilege to consume alcohol. Therefore, imposing a duty on underage adults not to provide alcohol to visibly intoxicated underage guests, who are likely to drive, directly flows from sixty years of decisional law and legislative enactments -- Rappaport, Linn, Kelly, the Social Host Liability Act, and additions to the Code of Criminal Justice. When an underage adult controls a residence or premises where he lives -- if only by having a key to the door -- he has sway over who enters and who remains inside, regardless of whether he is a leaseholder or titleholder to the property. When the same underage adult permits underage guests to bring beer, vodka,

or other intoxicating beverages into his home for the purpose of drinking -- conduct forbidden under the law -- then he should have some concomitant responsibility to monitor his guests' activities.

Should the line drawn for the imposition of a duty on the host depend on whether he poured the drink for his visibly intoxicated guest as opposed to whether he is a mute observer of his intoxicated guest's continued consumption of beer or vodka left on a table and swigged in cups provided by the host? The <u>Dower</u> court rejected that artificial distinction, and we do so here as well. <u>See</u> 276 N.J. Super. at 327. In either scenario, the social host has facilitated reckless or negligent conduct if the guest is expected to operate a vehicle. We cannot condone or encourage clever evasions of a duty that may have life-threatening or even deadly consequences.

The public clearly has an interest in deterring the unnecessary destruction and maiming of lives on our roadways and highways. Imposing a duty of care on an underage social host who controls his residence places a strong incentive on the host to exercise due care -- or suffer the consequences. As stated in <u>Kelly</u>, immunizing a social host is not consistent with the traditional law of negligence, which tests "whether the reasonably prudent person at the time and place should recognize and foresee an unreasonable risk or likelihood of harm or danger to others" by his conduct. 96 N.J. at 543

(quoting Rappaport, 31 N.J. at 201).  Subjecting Zwierzynski to potential social host liability advances the underlying rationales of the tort of negligence.

One of the principal purposes of tort law is deterrence.  Imposing a duty of care that encourages responsible conduct holds out the promise of reducing the number of preventable crashes, injuries, and deaths on our roadways.  Over the years, the number of drunk driving crashes has declined because our laws have responded in various ways to the needless carnage caused by intoxicated drivers.  Nevertheless, we cannot take too much comfort in that progress.  Statistics show that drunk driving remains one of the leading causes of serious injuries and deaths on our highways.

Another principal purpose of tort law is to provide compensation to the innocent victim of another person's negligence.  "[T]he fair compensation of victims who are injured as a result of drunken driving" -- in addition to deterring drunk driving -- is a central aim of the law of social host liability.  Id. at 551.  In balancing the equities, sound public policy dictates that the victim should not have to bear the costs of the injuries he suffers because of a tortfeasor's negligent conduct.  That equation is not altered if homeowners insurance is implicated.  Imposing a duty, in circumstances such as in this case, is no less sensible merely because we cannot determine how many lives

may be saved or how many victims will receive compensation from a negligent social host. See id. at 558.

Weighing the Hopkins factors, we conclude that an underage social host, who makes his residence available and facilitates underage drinking, has a duty not to knowingly provide or allow self-service of alcohol to a visibly intoxicated guest and, if a guest becomes visibly intoxicated, to take reasonable steps to prevent the guest from operating a motor vehicle. The imposition of such a duty is consonant with basic notions of fairness and sound public policy. See Hopkins, 132 N.J. at 439.[17]

VI.

A.

Accordingly, a plaintiff injured by an intoxicated underage social guest may succeed in a cause of action against an underage social host if the plaintiff can prove by a preponderance of the evidence the following:

> (1) The social host knowingly permitted and facilitated the consumption of alcoholic beverages to underage

---

[17] We do not adopt the Appellate Division's threshold for social host liability as the service of any alcohol to an underage adult in the present setting. First, the Appellate Division threshold may not be an easily workable standard for proving foreseeability and proximate cause. Second, that standard is not consistent with our established social host liability jurisprudence in Linn and Thomas and, to some extent, Kelly and the Social Host Liability Act. We recognize that the Dram Shop Act, which applies to licensed establishments, creates potential tort liability for the service of any alcohol to a minor or underage adult. See N.J.S.A. 2A:22A-5.

guests in a residence under his control. This element does not require that the social host be a leaseholder or titleholder to the property. It is enough that the social host has the ability and apparent authority to give others access to the property;

(2) The social host knowingly provided alcohol to a visibly intoxicated underage guest or knowingly permitted the visibly intoxicated underage guest to serve himself or be served by others. It is no defense that the underage guests bought and brought the alcoholic beverages that they or others consumed;

(3) The social host knew or reasonably should have known that the visibly intoxicated social guest would leave the premises and operate a motor vehicle and therefore would foreseeably endanger the lives and property of others;

(4) The social host did not take any reasonable steps to prevent the intoxicated guest from getting behind the wheel of the vehicle; and

(5) The social guest, as a result of intoxication facilitated by the social host, negligently operated a vehicle and proximately caused injury to a third party.

## B.

The rule we establish today was foreshadowed by the case law discussed earlier and is the logical extension of our common law jurisprudence and legislative enactments aimed at combatting drunk driving and providing fair compensation for its victims. In providing justification for the application of this new social host liability rule to the parties in this case, we need only turn

to our words in <u>Kelly</u> -- "to do otherwise would not only deprive the plaintiff of any benefit resulting from her own efforts but would also make it less likely that, in the future, individuals will be willing to claim rights, not yet established, that they believe are just."  96 N.J. at 551.

C.

Because this appeal comes before us on a motion for summary judgment filed by Zwierzynski, the evidence must be viewed in the light most favorable to Amboy -- the same standard that would govern a review by the trial court. <u>See</u> <u>Harz</u>, 234 N.J. at 329.  Based on that standard and the record before us, Zwierzynski is not entitled to judgment as a matter of law.  There are material issues of disputed fact that can be resolved only by a jury.

VII.

We therefore reverse the judgment of the Appellate Division, which affirmed the grant of summary judgment in favor of Zwierzynski.  We remand to the trial court for proceedings consistent with this opinion.


CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, PATTERSON, FERNANDEZ-VINA, and SOLOMON join in JUSTICE ALBIN's opinion.